OTTO RONNA, Administrator, Appellee, v. AMERICAN STATE BANK OF WALNUT et al., Appellants.

No. 40217.

FEBRUARY 14, 1933.

Wright & Baldwin, George S. Wright; Addison G. Kistle, and Paul E. Roadifer, for appellants.

Turner & Turner and Herminghausen & Herminghausen, for appellee.

KINDIG, C. J.—The American State Bank operated as a banking institution at Walnut, Iowa, until it became insolvent and the State Superintendent of Banking took charge thereof on May 23, 1922. While the American State Bank was a going concern, George Bohnk, on February 20, 1922, borrowed from it the sum of $3,061.83. To evidence this indebtedness, George Bohnk executed his promissory

note payable to the American State Bank, and secured the same by giving a chattel mortgage and assigning a $10,000 life insurance policy. Before the debt was paid, George Bohnk died on September 24, 1922. He was unmarried and left no children. His mother also was dead. Consequently his only heir at law was his father, Hans F. Bohnk.

Following the death of George Bohnk, Otto Ronna was appointed the administrator of his estate. The loan above named came due and the American State Bank sold the property covered by the chattel mortgage and applied the same on the indebtedness. These proceeds, however, did not satisfy the debt, and a balance remained which was paid from the money collected on the $10,000 life insurance policy. After subtracting the necessary moneys to pay the obligation to the American State Bank, there remained of the life insurance proceeds $8,927.08.

While the affairs of the American State Bank were being administered under the receivership proceedings aforesaid, a new bank was organized, known as the Walnut State Bank. Under written agreement with the receiver of the American State Bank, the new bank assumed the deposits of the American State Bank shown upon the books thereof to the extent of forty-five per cent. This forty-five per cent thus assumed under the agreement was to be paid to the respective depositors of the American State Bank upon their execution of a waiver relinquishing their right to the remaining fifty-five per cent of their deposits.

On September 18, 1926, Otto Ronna, as administrator of the George Bohnk estate, commenced an action against the American State Bank and the Walnut State Bank to recover: First, $170.00 being the balance due on a checking account; second, the $10,000 proceeds of the life insurance policy; and, third, $2,015.14, alleged to be the proceeds of the personal property sold by the bank. That suit ignored the contract above named under which the Walnut State Bank assumed forty-five per cent of the debts owed by the American State Bank.

The district court in said cause allowed the administrator $13,033.70. An appeal was thereupon taken to this court by the American State Bank, of Walnut, and the Walnut State Bank. See Ronna v. American State Bank, 213 Iowa 855. Upon that appeal this court reversed the judgment of the district court. A petition for rehearing was then filed by the administrator, which was overruled by

this court. Also a motion for judgment was filed by the administrator, and this court overruled the same. Then the cause was remanded by procedendo to the district court, with directions to that tribunal to take "further proceedings" * * * "not inconsistent with the opinion of the Supreme Court." When the cause reached the district court, however, the administrator together with Hans F. Bohnk filed a motion in the district court for a judgment on the record. This motion was resisted by the American State Bank and the Walnut State Bank on the theory that the trial court had jurisdiction to do nothing except dismiss the administrator's petition filed in Ronna v. American State Bank (213 Iowa 855), supra.

On the hearing under the motion, the administrator and Hans F. Bohnk introduced the entire record in the original case which was appealed, and the banks offered in evidence the administrator's motion for judgment in the Supreme Court; the motion to strike the same, filed by both banks, and the ruling of the Supreme Court thereon. The district court sustained the administrator's motion and entered judgment against the American State Bank and the Walnut State Bank for $6,540.16, made up as follows:

1. The checking account of the administrator.........$  170.86
2. Interest thereon from September 18, 1926, to
       date of judgment.....................................     62.56
3. Forty-five per cent of George Bohnk's insurance 4,017.19
4. Interest thereon at five per cent for three years   602.57
5. Additional interest ................................... 1,686.98.

Following this action of the district court, the American State Bank and the Walnut State Bank applied to this court for an order requiring the trial court to dismiss the administrator's petition in the original case of Ronna v. American State Bank (213 Iowa 855), supra, in accordance with the reversal thereof and the remand of the cause under procedendo. A stay order was issued by a judge of this court to maintain the status quo until the application for the new mandate is passed upon by this court.

It is argued by the administrator and Hans F. Bohnk that this court has no jurisdiction to issue the mandatory order required by the two banks, because a judgment has been entered in the district court. This judgment was thus entered, the administrator and Hans F. Bohnk argue, under a discretion which the trial court had to proceed with the case after the reversal and remand of the original

cause. Consequently the administrator and Hans F. Bohnk conclude that the only remedy available to the banks under the circumstances is an appeal from the second judgment.

I. For convenience in discussion, consideration will first be given to the question involved as it relates to the administrator alone.

■ Undoubtedly the two banks could have appealed from the judgment entered after reversal and remand had they so desired. See Code Section 12823, 1931 Code. But because of that, it does not necessarily follow that the banks could not, in lieu of appealing, successfully apply for a mandatory order of this court requiring the district court to comply with the procedendo of this court. As to whether or not the banks can thus apply, depends upon the facts and circumstances involved in the case. If the procedendo issued in Ronna v. American State Bank (213 Iowa 855), supra, under the circumstances gave the trial court discretion not to dismiss the administrator's petition, but to proceed farther in the original case, then the banks would not be entitled to the mandatory order. On the other hand, if the procedendo allowed the district court no discretion to proceed farther with the original case, but required it to dismiss the administrator's petition therein filed, then the banks are entitled to the mandatory order which they now seek.

■ A procedendo ordered by the court according to the particular case may direct the district court to do only a special thing after remand, or such mandate may, in harmony with the case, permit the trial court to exercise discretion, within proper limitations, to proceed further with the cause after remand. Section 12871 of the 1931 Code provides:

"* * * The court may reverse, modify, or affirm the judgment, decree, or order appealed from, or render such as the inferior court should have done. No cause is decided until the written decision is filed with the clerk."

When the opinion of this court indicates that the cause is reversed and remanded for a special purpose, the district court, upon the remand, is limited to do the special thing authorized by this court in its opinion, and nothing else. Such special purpose may be indicated in the opinion of this court or in the procedendo ordered by the court. Whitmer v. Board of Independent School District of White Pigeon, 210 Iowa 239; Pauly v. Montgomery, 209 Iowa 699; Pace v. Mason, 206 Iowa 794; Miller v. Perkins, 204 Iowa 782;

City of Charles City v. Ramsay, 199 Iowa 722; Manchester v. Loomis, 197 Iowa 1049; Haggerty v. Brower, 105 Iowa 395; Board of Supervisors of Pottawattamie County v. Board of Supervisors of Harrison County, 214 Iowa 655.

Again this court may reverse an equity cause without specific· ally directing the trial court, either in the opinion or in the procedendo, what to do upon remand. In such case, after the procedendo has been issued remanding the cause, the district court may, within proper limitations, proceed as it can in an equity suit between the submission of the record and the entry of the decree. However, in such event, a case cannot be tried by piecemeal, and the district court must act in harmony with the opinion of the Supreme Court. Even in the special event contemplated, a further or supplemental trial is all that is generally allowed (Allen v. City of Davenport, 115 Iowa 20), and a retrial is permissible, if at all, only in rare instances. Sexton v. Henderson, 47 Iowa 131; Austin v. Wilson, 57 Iowa 586. The district court, when proceeding with the further or supplemental trial, may, under proper circumstances, allow the amendment of pleadings and the introduction of specific testimony. Adams County v. B. & M. Ry. Co., 44 Iowa 335; Sanxey v. Iowa City Glass Co., 68 Iowa 542; Hogle v. Smith, 136 Iowa 32; Sleeper v. Killion, 182 Iowa 245; Dierksen v. Pahl, 194 Iowa 713; Kossuth County State Bank v. Richardson, 141 Iowa 738. When thus allow· ing an amendment to the pleadings or the introduction of additional evidence, the district court exercises a legal, as distinguished from an absolute or arbitrary, discretion.

For the purpose of aiding the understanding at this juncture, the following excerpt is quoted from Sanxey v. Iowa City Glass Co. (68 Iowa 542), supra, reading on page 547:

"It has been held * * * in actions of (the kind in question), * * * when the cause is remanded for judgment in the lower court, that the parties may be permitted to introduce material evidence which has been discovered since the original trial; also that they may set up matters materially affecting the merits of the cause which have occurred since the former trial; and that the amendment to the pleadings necessary for this purpose may also be made.":

Where, however, after a remand by procedendo, as in the case at bar, the district court, under its discretion aforesaid, has neither allowed an amendment to the pleadings nor the introduction of testi-

mony that differs substantially from that before the Supreme Court on the appeal, there is nothing for the trial court to do but to enter judgment in accordance with the opinion of this court. Under the opinion of this court in Ronna v. American State Bank (213 Iowa 855), supra, the trial court, after the remand by procedendo, should have dismissed the administrator's petition at his costs. On the appeal of that case, this court tried the cause *de novo* "upon the very merits of the case." Consequently, our decision upon the merits "was final, and there remained nothing for the court below to do, except to enforce, by proper decree, the decision of this court. * * * The trial of a chancery case in this court, which was heard in the court below upon written evidence, being *de novo*, is final and another trial cannot be again had in the court below unless for some special reason it is so ordered." Sexton v. Henderson, 47 Iowa 131; Adams County v. B. & M. Ry. Co., 55 Iowa 94; Austin v. Wilson, 57 Iowa 586; Lombard v. Gregory, 88 Iowa 431; Allen v. City of Davenport, 115 Iowa 20; City Council of Marion v. National Loan & Investment Co., 130 Iowa 511; Kossuth Co. St. Bank v. Richardson (141 Iowa 738), supra; Grove National Fire Insurance Co. v. American Bonding & Casualty Co., 200 Iowa, 847; McNiel v. District Court, 174 Iowa 417 (local citation 420).

Each allegation of the petition forming the basis for the district court's judgment after remand was before this court on the appeal. As said in the opinion, the administrator was not entitled to recover because the beneficiary of the estate, Hans F. Bohnk, who, under the record, was entitled to the funds, had waived his right against the American State Bank above named to fifty-five per cent of all the deposits and sums due, and he accepted the obligation of the Walnut State Bank for the remaining forty-five per cent thereof. But, before this forty-five per cent can be collected from the Walnut State Bank, as indicated in the original opinion in Ronna v. American State Bank (213 Iowa 855), supra, it is necessary for the owner to sign the written waiver contemplated by the contract between the superintendent of banking and said bank. Assuming, without deciding, that upon some theory it may be said that the beneficiary of the estate can be held to have, in effect, signed a waiver of fifty-five per cent of part of the money involved, deposited in the old bank, yet, although the beneficiary did, by letters and action, waive the entire fifty-five per cent of his and the estate's funds deposited in the original bank, under no circumstances, how-

ever, can it be said that such beneficiary, or the administrator, ex·
ecuted a written waiver, as contemplated by the contract with the
superintendent of banking, for all the money, of the beneficiary and
the estate, involved, which was thus deposited in said bank. More-
over, the original petition proceeded upon the theory that the ad-
ministrator could recover from the banks because they converted the
property belonging to the estate. Under the original petition, there
was no cause of action predicated on the certificates of deposit is-
sued, or to be issued, by the banks for the said forty-five per cent.
These certificates of deposit for the forty-five per cent, so far as
prepared, are still held by the banks. Demand for them has not
been made upon the banks by the administrator or the beneficiary
of the estate. Consequently, in the very nature of things, these cer-
tificates of deposit could not have been the basis for recovery in
the original petition. This original petition was the only pleading
before the district court when judgement was entered in the case
at bar.

In Ronna v. American State Bank (213 Iowa 855), supra, this
court held that the administrator, or the beneficiaries of the estate,
might receive such certificates of deposit from the banks for forty-
five per cent when the waiver above named was executed and the
original certificate for one hundred per cent returned. Obviously,
then, the administrator, contrary to the opinion in Ronna v. Amer-
ican State Bank (213 Iowa 855), supra, was not entitled to judg-
ment in the district court after the remand. No certificate of de-
posit for the forty-five per cent had been delivered by the banks
to the administrator or the beneficiary of the estate. There was no
pleading authorizing the administrator to recover on the undelivered
certificates of deposit. Nor was there evidence in the record prov-
ing the delivery of such certificates for the forty-five per cent. The
pleadings and evidence were substantially the same after the remand
as they were before. That being the situation, the district court,
after the remand, had no power or jurisdiction to do anything ex-
cept enter judgment in accordance with the opinion, which required
that the administrator's petition be dismissed at his costs. Hence
the district court had no right to enter the judgment it did on the
administrator's motion. Rather than so doing, the district court
should have dismissed the administrator's petition, as before said,
on the motion of the two banks. While this court, in Ronna v.
American State Bank (213 Iowa 855), supra, indicated in a closing

paragraph that the decision was "without prejudice to the rights of Hans, or his assignees, to payment of the [certificates for forty-five per cent]," yet judgment was not entered therefor. Nor was the district court directed or authorized to enter judgment on such certificates under the petition involved in that litigation. Not only is the administrator or the beneficiary of the estate entitled to collect on the certificates of deposit named in said opinion, but likewise they are entitled to collect forty-five per cent of all the deposits belonging to them, whether now represented by certificates or not.

According to Lombard v. Gregory (88 Iowa 431), supra, reading on page 432:

"The district court (under the circumstances) had no jurisdiction to determine the correctness of the decision of this court. It could do no more than enter a decree in accord with the opinion of this court."

Under the condition of the pleadings and the evidence, the district court, after the remand, had no discretion. There being no discretion in the district court under the circumstances, the Supreme Court can order that tribunal to comply with its mandates. Section 4, Article V, of the state Constitution declares:

"The Supreme Court shall have appellate jurisdiction only in cases in chancery, and shall constitute a Court for the correction of errors at law, under such restrictions as the General Assembly may, by law, prescribe; and shall have power to issue all writs and process necessary to secure justice to parties, and exercise a supervisory control over all inferior Judicial tribunals throughout the State."

Also, Section 12879 of the 1931 Code provides:

"The Supreme Court may enforce its mandates upon inferior courts * * *"

See 38 Corpus Juris 642, Sec. 155; State ex rel. Bradbury v. Thompson, 95 N. W. 47 (Neb.); Gaines v. Caldwell, 148 U. S. 228, 13 Sup. Ct. Rep. 611, 37 Law. Ed. 432; In re Sanford Fork & Tool Co., 160 U. S. 247, 16 Sup. Ct. Rep. 291; State ex rel. Horton v. Dickinson, 89 N. W. 431 (Neb.); Brictson Mfg. Co. v. Munger, 20 Fed. (2d) 793. In State v. Banning, 205 Iowa 826, on page 828, this court said:

"The trial court has no discretion but to observe [the Supreme Court's] * * * command."

To the same effect see Jones v. City of Sioux City, 192 Iowa 99 (local citation 102). Such command of the Supreme Court must be at least substantially complied with by the district court. Mc-Clain v. Roberts, 198 Iowa 959 (local citation 961, 963). The power of this court in the premises is somewhat analogous to our power in proceedings involving certiorari, prohibition, habeas corpus, and other like applications for writs.

So, under the circumstances of this record, the district court had no power or jurisdiction to enter judgment against the banks. Therefore, so far as the administrator is concerned, the district court is hereby commanded to set aside the unallowable judgment against the banks. According to the opinion in Ronna v. American State Bank (213 Iowa 855), supra, an action for the forty-five per cent above named is abated until the written waiver is signed and said original certificates surrendered, as required by the contract between the two banks which was approved by the state superintendent of banking. Consequently the dismissal of the petition in the original case will not bar a proper action by the party in interest, after the waiver is signed, to collect the forty-five per cent and any interest that may be due thereon.

II. There remains for consideration, then, the question whether Hans F. Bohnk stands in a different position than does the administrator. Bohnk, it is to be recalled, joined with the administrator in the motion for judgment against the banks after the remand of the cause following the appeal. When so doing, Hans F. Bohnk did not have himself substituted as a party plaintiff. Neither did he intervene by petition. Furthermore, Hans F. Bohnk set forth no pleading and introduced no evidence indicating an issue different from the one presented to the Supreme Court on the appeal in Ronna v. American State Bank (213 Iowa 855), supra.

Under the circumstances, Hans F. Bohnk, as well as the administrator, is bound by the opinion and decision of this court in Ronna v. American State Bank (213 Iowa 855), supra. According to the previous opinion just named, neither Hans F. Bohnk nor the administrator can recover the forty-five per cent due until the proper one of them signs the waiver required by the contract before named.

So, under all the circumstances, Hans F. Bohnk is in no dif-

ferent position than the administrator. The district court, then, had no right to enter judgment against the banks in favor of Hans F. Bohnk. In fact, it had no power or jurisdiction so to do under this record. Not having the power and jurisdiction to enter the judgment, the court is hereby ordered and directed to set the same aside, in harmony with the foregoing opinion.

Wherefore, the mandatory order asked by the banks is hereby granted, and the district court ordered to set aside the judgment entered against them after the remand.

All the Justices concur except EVANS and UTTERBACK, JJ.

EVANS and UTTERBACK, JJ., dissent.

EVANS, J. (dissenting).—I am unable to concur in the foregoing opinion. I deplore its procedure and I disagree quite emphatically with its conclusions. The case is an original proceeding whereby ·a writ of mandamus was sought and was issued. This was directed to, and served upon, the trial judge. Pursuant thereto, the majority opinion now commands the trial judge peremptorily to dismiss the original case, above entitled. The original case came before us on appeal from the decree of the said trial judge. We reversed the decree and remanded it to the same court for further proceedings not inconsistent with our opinion. The defense in the original case was partial only, and included a tender of a diminished amount for which liability was conceded. In the original trial in the district court, the plaintiff had recovered decree for the full amount of his claim, and the defendant appealed. We reversed the decree, and held in substance that the partial defense was good, and that the defendant was liable to the plaintiff only for the amount that had been tendered. Our· opinion on that appeal is to be found in 213 Iowa 855. On remand the trial judge construed the opinion and the procedendo to mean that the plaintiff was entitled to judgment for the amount indicated in such opinion with 5% interest thereon. He entered judgment accordingly. No appeal was taken from that order. In lieu of appeal, the defendant instituted this original proceeding. The position taken by the defendants is that our former opinion was ·peremptory and definite, and that it peremptorily required a dismissal of the plaintiff's case without regard to any right which the plaintiff might have or might hereafter assert. This contention is fully sustained in the majority opinion. Was the trial judge justified

in construing the original opinion as he did? I submit that our opinion imposed no specific mandate upon the trial judge other than to proceed consistently with the opinion as a whole, and that the judgment entered by the trial judge did conform to the purpose and spirit thereof. The original opinion is too long to be set forth *in extenso*, but its citation renders it readily accessible. The principal item involved in the dispute was the proceeds of a life insurance policy for $10,000. It was collected and deposited by the plaintiff-administrator in the fall of 1922. The policy was upon the life of George Bohnk. George was survived by his father Hans as his only representative and heir. Hans was in the penitentiary, and so continued during the period of the litigation. Ronna was the president of the American State Bank of Walnut, which closed its doors in 1922. Negotiations were had between the insolvent bank and a new bank to be organized and known as the Walnut State Bank. The new bank assumed the payment of 45% of the deposits of the insolvent bank under an agreement by which the depositor should waive 55%. The administrator sued both banks for the whole amount of the insurance and attempted to prove a trust. The Walnut State Bank pleaded the waiver agreement and tendered its performance. This agreement provided for the issuance of certificates of deposit by the Walnut State Bank for 45% of the deposit, due in three years, at 5% interest. This agreement was dated in the fall of 1923. Hans denied that he had ever signed the agreement. We held on the appeal that he *had* signed it and was therefore bound by it. Such was the substance of our opinion. The tender made by the defendant-bank was in writing only. The certificate of deposit involved in the tender was long past due when the case was decided here. The tender made in the pleading was of the certificate already issued. It had never left the hands of the defendant-bank. It does not appear that the tender was renewed upon the remand of the case, nor was there any tender of the money due thereon. Upon remand, the case was laid before the trial judge upon our opinion on the former record. The defendant insisted upon a dismissal. The plaintiff contended for the right to recover the amounts approved in our opinion. Such in general were the mutual contentions of the parties in their last appearance before the district court.

The controversy before us on the original appeal was whether Hans had signed a waiver as to this insurance item. He admitted he had signed a paper, but that it related only to a smaller deposit

which he had in the bank. We held that the waiver signed by him was complete and effective. We said in part (p. 861) :

"Hans, according to his contention, therefore signed this general waiver and agreement without any specification of deposit or interest or claim or any limitation upon its scope and effect. The waiver was in such form that Hans was to set out the amount of his deposits but he (as he claims) did not do so. By implication he left it to those who were to act upon it to insert such amounts. Hans did not limit his agreement or authority to any deposit or claim. On his contention with full knowledge and intention that the waiver signed by him was to be used in the reorganization, that it was to be accepted by the other depositors and all others interested as creditors and by the superintendent of banking and by the proposed reorganized bank he agreed 'to waive any and all claims' that he had against the American State Bank to the extent of 55 per cent, that the reorganized bank should assume liability to depositors to the remaining 45 per cent, that the superintendent of banking and the American State Bank might transfer to the reorganized bank or to any creditor of the American State Bank any notes or property of the American State Bank as might be necessary for the purpose of effecting the reorganization. The matter of reorganization was submitted by the superintendent of banking to the Attorney General. The waivers were examined by the representatives of the superintendent of banking and the Assistant Attorney General. Among the waivers submitted was that signed by Hans as it appears in its present condition specifying the C. D. $1,200 and the $10,000 insurance. When and by whom this notation was made does not further appear except that all the witnesses who testified other than Hans and Turner say that the notation in its present form was on it when they first saw it. The new corporation, the Attorney General and the banking department relied on this waiver."

Again, in reciting book entries of the bank we said (p. 865) :

"Then follows in the list of depositors 'Balance of Geo. Bohnk Insurance Payable to Hans Bohnk,' and under head of '45 per cent,' 4,017.19, under the head of 'waived 55 per cent,' 4,909.89, under the head of 'total,' 10,000.00."

A letter written by the Walnut State Bank to Hans Bohnk ap-

peared in evidence, and our opinion makes the following quotation therefrom:

"Therefore, out of this $10,000.00 we deducted the balance of this debt, leaving the total amount of $8,927.08 due you as the heir of his estate. This amount was, of course, to your credit in the American State Bank, and covered under the waiver which you signed for your deposits therein. Now, the 45% of this amount, which is the part thereof that is assumed and guaranteed, has been placed in a Certificate of Deposit for $4,017.19 issued by the new bank, drawing interest from September 26, 1923, at the rate of 5% per annum, according to the terms and conditions of the waiver contract."

Following this quotation we said in the opinion:

"Hans accepted this situation for five months later, on April 9, 1925, he wrote to an officer of the Walnut State: 'Dear Friend: I am in request to no from you whether or not I am able to draw the intress on the $4,017.19 which was due last September, 1924, at any time I would call for it, but not at this writing, as I want to heare from you first and then that I may write you again and tell you what I want and what I want you to do, or that I may draw a part of it and leave the others just as I feel about it. * * *' "

Following the above quotation we said:

"It will be seen that Hans was then accepting the relationship to the Walnut State Bank as having a C. D. for $4,017.19 on which the first year's interest was due the preceding September. He was deferring his decision as to whether to draw a part and leave the rest. * * * Hans Bohnk was the sole distributee of his son's estate. The only parties beneficially interested in the life insurance policy were therefore the bank and Hans F. Bohnk. While plaintiff was under the duty of making collection of the insurance his duty was to the bank of which he was president and to Bohnk for whom, as to the balance above the amount to which the bank was entitled, he was trustee. The plaintiff and the bank of which he was president and those dealing with the bank treated the balance of the insurance fund as belonging to Hans F. Bohnk. Hans so regarded the balance in the hands of the American State Bank after the payment of the indebtedness to it as his property. The only right that the plaintiff

has at any time had to the insurance money is the naked right to receive the balance after payment of the American State Bank and to pay it to Hans. The law looks beyond the nominal parties to the real parties in interest and determines the case according to the rights of the latter. See Foreman Shoe Co. v. F. M. Lewis & Co., 60 N. E. (Ill.) 971; 47 C. J. 29. Hans is the real party in interest. The suit is prosecuted for his benefit. He is barred *from claiming more than the 45 per cent* of the balance of the insurance money. He cannot through the empty formality of suing in the name of the administrator *recover more.*"

Again, we said (p. 869) :

"By the written contract the Walnut State Bank agreed to pay 45 per cent of the deposits in the American State Bank. The only basis for a claim that plaintiff or Hans F. Bohnk is, on account of the insurance money, a depositor is the fact that Hans has been treated and has accepted the relationship as such to the amount of the $4,017.19 for which Hans has been offered a certificate of deposit in the Walnut State Bank. There is no provision of the contract by which plaintiff or Hans is entitled to recover *more than the 45 per cent.*"

And again (p. 870) :

"He could obtain no claim under the contract between the American State and the Walnut State except so far as that contract was made for his benefit. It was made for his benefit to the extent of 45 per cent. This he knew of, accepted for more than five months when he inquired about his right to interest on the precise amount of the certificate which was held for him by the Walnut State— $4,017.19."

Our final word was as follows: "The Walnut State Bank is not contesting the right of Hans to payment of the certificates of deposit which it has made out in his favor and this decree will be without prejudice to the rights of Hans, or his assignees, to payment of the same.—Reversed."

I submit, therefore, that our opinion was devoted to a consideration of the rights of the parties under the alleged agreement. There is not a peremptory word therein that calls for a dismissal in terms. To my mind its clear implications are that the plaintiff

was entitled to recover 45%, and no more. So reading the opinion, the trial judge entered judgment for the very amounts specified in our opinion, with 5% interest.

The final word of our opinion is that the Walnut State Bank is not contesting the right of the plaintiff to the 45%. The defendant's pleading tendered the 45%. This tender was based upon the allegation that the defendant had waived 55%. The tender in the pleading was good, pending litigation. The issues of the litigation were settled by our opinion. That opinion was predicated upon the tender, and assumed that the tender would be performed. Our opinion constituted an acceptance of the tender for the plaintiff, *volens nolens*. It was up to the defendant to perform the tender either by deposit of the money or by manual offer thereof. The defendant, however, took the ground that the reversal by us of the original decree amounted to an order of peremptory dismissal, regardless of whether the defendant performed the tender or not. It contended in effect that the reversal necessarily left the plaintiff without any present relief; that the case must be dismissed regardless of the payment of the tender; and that the question of liability for the amount of the tender could be determined only in a new case. The contention now is that the plaintiff is not entitled to recover the 45% *until he signs the waiver*. The very finding of our opinion is that he *did sign the waiver*. That fact is taken out of the field of dispute by our holding. The defendant has the benefit of a complete adjudication of the question. What legal effect could be accomplished by requiring the plaintiff to sign the waiver again? Would his obligation, or that of the defendant, be either more or less than is already adjudicated by our opinion? The defendant put itself in the attitude of refusing to perform the pleaded tender for want of another signing by the plaintiff. That, however, is mere argument in support of the procedure. There is no record before us that the defendant so based its refusal to perform the tender; nor did the defendant so qualify his tender in the pleadings in the original case. Under the procedure adopted, the defendant is before us contending that the reversal of the decree by us and the remanding of the case by procedendo for "further proceedings" necessarily required a peremptory dismissal of the plaintiff's case. The reversal of a decree in equity does not necessarily deny the appellee all relief. The reversing opinion must be considered in its entirety, in order to determine the relief to which each or both parties are

respectively entitled. The question before us now is one of interpretation of our former opinion. We are as powerless to alter it ourselves as was the trial judge. We must read and interpret it from the point of view of the trial judge. The trial judge was required to interpret both the procedendo and the opinion. The procedendo purported to bring the case back to him for "further proceedings" not inconsistent with the opinion. The interpretation of the trial judge was that he was to put into decretal form the findings of our opinion. He was bound to assume that he had some judicial duty in the premises. The defendant contended for an absolute dismissal. Why should we remand a case to the district court for "further proceedings" if the only order to be. entered is one of absolute dismissal? The case was triable *de novo* before us. It was as easy for us to enter the order of dismissal, if such was the real intent, as to order a remand. If such was the real intent of the opinion and the remand, why should not such intent be disclosed in specific terms? I submit that a fair interpretation of the opinion and the order of remand does not justify the contention, and that the trial judge was justified in interpreting the remand to mean that the performance of the tender, under the circumstances thereof, could be accomplished more conveniently in the trial court than it could here.

It will be noted that the majority opinion herein provides that the dismissal of the case is to be without prejudice to a new action by the plaintiff. Assuming such proviso to be effective when the time comes, it is good as far as it goes. The manifest intent of it is to protect the plaintiff against a plea of prior adjudication. But of what avail is it to the plaintiff to be protected against a plea of prior adjudication in a future action which is apparently already barred by the statute of limitations? More than ten years have elapsed since this deposit was made. If the plaintiff is to be protected in the assertion of his legal rights, it must be done in this action. I would discharge the writ.