**LAKESIDE BOATING AND BATHING INC., An Iowa Corporation, Appellant,**

v.

**STATE of Iowa, et al., Appellees.**

No. 83–288.

Supreme Court of Iowa.

Jan. 18, 1984.

David P. Jennett of Flagg, Hockett, Benhart & Bittner, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., John P. Sarcone and Steven G. Norby, Asst. Attys. Gen., for appellees.

Considered by REYNOLDSON, C.J., and UHLENHOPP, HARRIS, McCORMICK and WOLLE, JJ.

McCORMICK, Justice.

This appeal involves a title dispute over land created by dredge fill along the shore of Storm Lake. Plaintiff Lakeside Boating and Bathing, Inc., brought this action against defendant State of Iowa to quiet title to the land, and the State counterclaimed to quiet title in itself. The trial court quieted title to two of three parcels in the State and refused to quiet title to the third parcel in either party. Upon plaintiff's appeal, we affirm in part and reverse and remand in part.

In its petition as amended, plaintiff sought to quiet title on theories of adverse possession, equitable estoppel, accretion, and record title under Iowa Code section 614.17 (1981). In its counterclaim the State sought to quiet title on the theory the land was part of the lakebed. Prior to trial the State obtained an adjudication of law points under Iowa Rule of Civil Procedure 105 in which the court, through Judge Barlow, held that the law of accretion was inapplicable and that plaintiff could not recover under section 614.17. The case proceeded to trial on the claims of adverse possession and equitable estoppel and on the State's counterclaim. After trial, the court, through Judge Cooper, held against plaintiff on its two theories and held in part for the State on its counterclaim.

Three questions are presented: whether the trial court erred (1) in holding that title to dredge-fill land is not determined by the law of accretion; (2) in ruling against plaintiff's claim under section 614.17, and (3) in quieting title to the two parcels in the State.

We reproduce the sketch used by the parties that shows the location of the property in dispute:

Parcels D, E and F are the tracts whose ownership is in dispute. Parcels A, B and C are lots to which plaintiff has record title. Parcels E and F were created by the State when it dredged the lake between 1941 and 1943. Parcel D is a strip that previously existed but was excluded from the conveyance which gave plaintiff parcels A, B and C. Before trial the State disclaimed any interest in parcel D.

I. *Accretion.* The court ruled as a matter of law on the rule 105 motion that title to dredge fill land cannot be determined in Iowa under the law of accretion. Plaintiff contends that whenever dredge fill deposited by the State has the effect of depriving a riparian owner of shoreline in circumstances that constitute a taking, the riparian owner should take title to the dredge fill in accordance with accretion principles. Because the trial court held the law of accretion does not apply to dredge fill, plaintiff was foreclosed at trial from attempting to show that a taking occurred in this case. If the trial court was correct on the law, it does not matter what the evidence might have shown. If the court was incorrect, the case must be reversed and remanded to give plaintiff the opportunity to make the necessary showing.

■■■ Principles governing the law of accretion are summarized in *Nielsen v. Stratbucker*, 325 N.W.2d 391, 392–93 (Iowa 1982). Traditionally accretion has been said to result from a gradual and imperceptible addition to the shoreline by action of the water to which the land is contiguous. A riparian owner's right to accreted land is the same whether the accretion occurs from natural causes or from artificial means over which the owner has no control. *Id.* at 393. A riparian owner cannot acquire accretions caused by artificial means under the riparian owner's control. *Board of Park Commissioners v. Taylor*, 133 Iowa 453, 462, 108 N.W. 927, 930 (1906) ("Now, we think it is well established that a riparian owner cannot encroach upon the banks of a navigable stream on which he is bounded by filling out his lots and thus infringing upon the banks or bed of the stream belonging to the public."). Under the undisputed pleadings in the present case the dredge fill was placed against the shoreline by the State.

■■■ The State's rights arise from its ownership of the bed of navigable waters to the ordinary high water mark. *See Nielsen,* 325 N.W.2d at 393. Riparian ownership in Iowa is subject to the dominant right of the State to improve navigation. It is thus not a taking of private property for the State to make changes in a lakebed when reasonably necessary in aid of navigation even though the changes have the effect of cutting off a riparian owner's access to the lake. *Peck v. Alfred Olsen Construction Co.,* 216 Iowa 519, 525–33, 245 N.W. 131, 134–37 (1932). Recognizing this principle, plaintiff nevertheless contends a riparian owner acquires a right to dredge-fill land when its placement against the particular riparian owner's land was not reasonably necessary for navigational purposes.

Courts in other jurisdictions have held the doctrine of accretion to be applicable in such circumstances. *See Bonelli Cattle Co. v. Arizona,* 414 U.S. 313, 94 S.Ct. 517, 38 L.Ed.2d 526 (1973); *State v. Gill,* 259 Ala. 177, 66 So.2d 141 (1953); *Michaelson v. Silver Beach Improvement Association,* 342 Mass. 251, 173 N.E.2d 273 (1961); *Harrison County v. Guice,* 244 Miss. 95, 140 So.2d 838 (1962); *De Simone v. Kramer,* 77 Wis.2d 188, 252 N.W.2d 653 (1977); *cf. United States v. Harrison County, Mississippi,* 399 F.2d 485 (5th Cir.1968), *cert. denied sub nom. Suhren v. United States,* 398 U.S. 918, 90 S.Ct. 925, 25 L.Ed.2d 99 (1970) (state constitution precluded use of accretion doctrine to give public beach to littoral owners). We believe the reasoning of those authorities is persuasive.

The leading case is *Michaelson* in which the state placed dredge fill from a harbor improvement project along the plaintiffs' private beach. The effect was to deny plaintiffs their prior access to the ocean. In recognizing their claim to the beach as extended by the dredge fill, the court held that the state could avoid paying damages

for a taking only if a navigational purpose existed in the made land. For such to be the case the court said:

> The proper test is that the related project is immune from private rights only when it is so related to a project under the acknowledged public powers in the navigable waters ... that enjoyment of the latter project would be substantially impaired without the creation of the former.

342 Mass. at 257, 173 N.E.2d at 277. The court noted that under the undisputed facts the creation of the beach was not necessary for enjoyment of the dredged channel. It added:

> Even if it is assumed that interference with the right of access may in certain circumstances constitute a taking for which the Commonwealth may be liable in damages, the plaintiffs contend that the land created by the Commonwealth belongs to them as the littoral owners, as would a gradual growth of the beach by natural accretion or by accretion aided by an artificial force. This contention impresses us as sound. A littoral owner takes his property with the knowledge that the boundary may change by accretion or reliction. This is a necessary condition of owning property along tidal waters. It is further assumed that coastwise and tidal currents may be altered by public works necessary for the fisheries or navigation. Such projects may drastically change the direction and force of the natural currents. But they are in accord with the traditional and essential governmental powers to which the riparian land is held subject. Consequently the law applicable to natural accretions should govern.

*Id.* at 258, 173 N.E.2d at 277–78. The court concluded that the plaintiffs owned the new beach.

The same principles were adopted under the federal common law in *Bonelli.* The Court said that "where land cast up in the Federal Government's exercise of the servitude is not related to furthering the navigational or related public interests, the accretion doctrine should provide a disposition of the land as between the riparian owner and the State." 414 U.S. at 329, 94 S.Ct. at 528, 38 L.Ed.2d at 541. Consequently the Court held that in compensation for otherwise noncompensable losses "land surfaced in the course of such governmental activity should inure to the riparian owner where not necessary to the navigational project or its purpose." *Id.* The force of this reasoning is unaffected by the subsequent overruling of *Bonelli* on other grounds in *Oregon ex rel. State Land Board v. Corvallis Sand & Gravel Co.*, 429 U.S. 363, 97 S.Ct. 582, 50 L.Ed.2d 550 (1977).

■ Applying accretion principles to dredge fill in the present circumstances differs from applying them in *Nielsen* only because in *Nielsen* the government activity involved placement of pile dikes in the river to divert the flow of water rather than casting soil directly against the shoreline as in the dredging operation. The difference in speed of the process does not constitute a difference in principle. Because the policies behind the accretion doctrine are equally applicable, we believe the doctrine should be applied in each situation. We therefore hold that when the government deprives a riparian owner of access to the water by a deposit of dredge fill in circumstances where the particular placement of the made land lacks a reasonable and substantial relationship to a navigational or other paramount purpose, ownership of the land inures to the riparian owner.

■ This means that the State's purpose in dredging a lake to enhance recreational navigation, for example, will not automatically give the State title to dredge fill that it deposits against the shore. For the State to have title to the new land, the dredge fill's particular placement must independently have a reasonable and substantial relationship to the same or different navigational or other public purpose to which the riparian owner's right of access is made subservient by law. Otherwise a taking would occur. Thus, if the particular placement of dredge fill does not independently

serve a recognized paramount governmental purpose, the riparian owner acquires title to the made land as if it had been deposited against the shore by accretion.

Because the trial court held otherwise on the rule 105 motion, we reverse and remand to give plaintiff an opportunity to establish its claim under this principle. We note, however, that plaintiff was riparian owner only of lot C. Under principles of apportionment of accreted land, the accretion doctrine will therefore only support giving plaintiff frontage on the new shore proportional to its frontage on that lot. *See Todd v. Murdock*, 230 Iowa 1121, 1125–26, 300 N.W. 284, 286 (1941).

■ We also note the State's contentions that plaintiff's claim to the dredge fill is precluded because plaintiff's predecessor in title who owned the land when the dredging occurred consented unconditionally to its placement against the land and subsequently entered a lease with the State in which he released the State from any claim arising from the dredging operation. The record contains evidence relating to the State's contentions. Upon remand, the trial court shall permit the State to assert these contentions as defenses and allow both parties the opportunity to offer additional evidence on them. Upon submission, if the court finds either defense to be established by a preponderance of evidence, such finding will be sufficient to bar plaintiff's claim.

II. *The section 614.17 issue.* Plaintiff sought to quiet title on the theory the State had not filed a claim asserting its interest in the dredge-fill land within the limitation period in the marketable title statute, section 614.17. This court has not decided whether the limitations provisions of section 614.17 are applicable to the State. *Cf. Chicago & North Western Railway Co. v. City of Osage*, 176 N.W.2d 788, 791–94 (1970) (Iowa Code section 614.24 (1966) barring stale reversions is applicable to a municipality). In this case the trial court held in ruling on the rule 105 motion that section 614.17 does apply to the State, and the State has not appealed that holding. The

controversy here concerns the court's additional holding that plaintiff could not recover under section 614.17 because it failed to prove that it or its predecessors in title had record title to the land on January 1, 1960, the relevant date for triggering the State's obligation to file notice of its claimed interest within one year of July 1, 1970.

■ Plaintiff points out, correctly, that the court's additional adjudication was not authorized by rule 105. The rule permits adjudications of law only on legal points arising from uncontroverted pleadings. A fact issue existed here under the pleadings concerning record title, and disposition under rule 105 should therefore have been refused. *See Montz v. Hill-Mont Land Co.*, 329 N.W.2d 657, 657 (Iowa 1983).

This error does not require reversal, however, because the facts on which the adjudication was based were established at trial of the case. It was essential for plaintiff to prove color of title for its adverse possession claim to succeed. Plaintiff asserted that the legal description in the deed conveying parcels B and C embraced parcels D, E and F as well, showing the requisite color of title in it and its predecessors. Consequently the issue of record title was fully tried. Plaintiff's color of title argument depended on the meaning of the terms "high water mark" and "high water line" in the deed, because the description gave plaintiff parcels A and B "beginning at a point on Storm Lake 20 feet East of the official high water mark" and parcel C "to the high water line." The remainder of the description was a metes and bounds description of the parcels tying the parcels to a government lot on the official plat.

Plaintiff's argument hinges on ambiguity in the meaning of high water mark or high water line. It contends, in effect, that the terms signify a boundary that automatically moved toward the lake as the dredge fill was added and as the high water line changed. The descriptions, however, are not ambiguous. They obviously refer to the high water line at the time the government lot was platted, long before the dredge fill was added. This line remains

the boundary of the parcels conveyed "in the absence of any change by accretion." *Board of Park Commissioners v. Taylor,* 133 Iowa 453, 462, 108 N.W. 927, 430 (1906). Accretion is, of course, an independent doctrine.

 Under plaintiff's theory of ambiguity, no effect is given to the lot dimensions specified in the conveyance. Moreover, plaintiff ignores the fact that the description of parcel D also refers to the high water line. Because parcel D bounded the lake before the dredge fill was added, and parcels A and B did not, that parcel rather than A and B would expand with the flexible boundary if plaintiff were otherwise correct. The trial court rejected plaintiff's theory and so do we. Because plaintiff failed at trial to establish color of title in the dredge-fill land at any material time, no basis for application of section 614.17 was present. Therefore, even if the statute is applicable to the State, it does not help plaintiff in this case.

 III. *Sufficiency of the evidence.* Plaintiff contends the trial court erred in quieting title to parcels E and F on the State's counterclaim. We find that the State established its right to have its title to these parcels quieted against plaintiff on the strength of its own claim to title as owner of the lakebed except for the possibility that plaintiff might establish its claim to some portion of the land under accretion principles. Upon remand plaintiff shall have an opportunity to prove its claim to a portion of the dredge-fill land under the accretion doctrine as enunciated in this opinion.

Costs one-half to plaintiff and one-half to the State.

AFFIRMED IN PART AND REVERSED AND REMANDED IN PART.