**LAKESIDE BOATING AND BATHING, INC., an Iowa Corporation, Appellant,**

v.

**STATE of Iowa, et al., Appellees.**

No. 85–1625.

Supreme Court of Iowa.

March 18, 1987.

David P. Jennett of McCullough Law Firm, Sac City, and David R. Gault of Bittner and Gault, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., and John P. Sarcone and Steven G. Norby, Asst. Attys. Gen., for appellee State of Iowa.

Considered by REYNOLDSON, C.J., and LARSON, SCHULTZ, CARTER and WOLLE, JJ.

WOLLE, Justice.

The first time this quiet title action was before us we reversed the decree of the trial court with directions concerning issues to be tried on remand. *See Lakeside Boating & Bathing, Inc. v. State,* 344 N.W.2d 217 (Iowa 1984). Two of the issues remanded for trial were the State's defenses of consent and release. We wrote:

> Upon remand, the trial court shall permit the State to assert these contentions as defenses and allow both parties the opportunity to offer additional evidence on them. Upon submission, if the court finds either defense to be established by a preponderance of evidence, such find-

ing will be sufficient to bar plaintiff's claim.

*Id.* at 222. The trial court upon remand quieted title in the State, finding that the State had established both the consent and release defenses. We find no merit in Lakeside's several challenges to that decree, and we therefore affirm.

This appeal concerns only title to parcel F, one of the six parcels of land at stake in *Lakeside. Id.* at 218–20 (providing sketch showing location of the parcels, the background facts, and the procedural history of this case). Parcel F was created by the State when it dredged the lake between 1941 and 1943. *Id.* at 220. The dredge fill was deposited next to parcel C and resulted in elimination of littoral access to parcel C.

In the trial which followed remand, the plaintiff attempted to prove that it was entitled to parcel F under the doctrine of accretion. The State in response asserted that the plaintiff's predecessor in title, one Jake Figi, had consented unconditionally to placement of the dredge fill and had also released any claims arising from the dredging operation by leasing parcel F from the State. Following submission, the trial court found facts supporting the plaintiff's accretion theory, but it then quieted title to parcel F in the State based on other findings upholding the State's release and consent defenses. The court found that Figi appeared before the Iowa State Conservation Commission (commission) on March 22, 1943, and stated that he had given permission for the fill to be deposited against parcel C. Moreover, the court found that Figi thereafter leased parcel F from the State. The written "lease agreement" contained the following unambiguous release language explicitly treated as part of the consideration for the lease:

> The State grants to the second party as lessee the exclusive right to operate bathing and boating facilities on and from the dredge fill between the Cobblestone Inn and Storm Lake on the area hereinafter set forth, for the calendar years 1944, 1945, 1946, 1947 and 1948 for

and in consideration of the following annual fees:

> One ($1.00) Dollar per year and release, satisfaction, and discharge of any and all claims and demands of the lessee against the State particularly those growing out of the dredging operations conducted by the State adjacent to the area owned by the lessee, execution of this agreement being construed as such release.

Plaintiff in this appeal contends that the State neither pleaded nor proved by a preponderance of the evidence its affirmative defenses. Plaintiff also attacks the release defense contending that the underlying written lease agreement was unconscionable, without consideration, and entered into by mistake. We address in turn each of those issues, finding it unnecessary to decide the issue of consent which was an alternative holding of the trial court. We review de novo this quiet title action tried in equity. Iowa R.App.P. 4, 14(f)(7); *see Kendall v. Lowther,* 356 N.W.2d 181, 183 (Iowa 1984).

### I. *The Pleading and Proof of Release.*

■ Plaintiff first contends that the State did not specially plead the defense of release and should therefore have been precluded from asserting it on remand. The trial court gave two reasons for considering the release defense: the parties had consented to trial of the issue, and our court remanding the case had directed that it be considered. The trial court was correct. Not only did the State's pleadings mention the 1944 lease agreement which contained the release, but our directions for remand explicitly informed the parties that evidence of release could be presented. *See Lakeside,* 344 N.W.2d at 222.

■ Plaintiff next argues that the lease agreement itself, offered by plaintiff as a stipulated exhibit during the first trial, should not have been considered on remand until reoffered and again admitted into evidence. Plaintiff points out that the issues were different in the second trial, explaining that the court in the first trial had erroneously refused to permit plaintiff to

proceed on its accretion cause of action. Plaintiff argues that the lease was relevant to prove title on the theories presented in the first trial but was not relevant to prove title based on the accretion theory presented following remand.

The trial court rejected the plaintiff's theory that the trial on remand must start from scratch, and we agree with that ruling. In equity actions like this the trial court is limited on remand to the purposes specified by the appellate court which remands the case. *Ronna v. American State Bank,* 215 Iowa 806, 810, 246 N.W. 798, 800 (1933) (district court on remand "is limited to do the special thing authorized by this court in its opinion, and nothing else"); *see Kuhlmann v. Persinger,* 261 Iowa 461, 468, 154 N.W.2d 860, 864 (1967) (district court on remand has "no power or jurisdiction to do anything except to proceed in accordance with the [supreme court] mandate"). In law actions which may require trial to a jury, a different rule necessarily applies. *See Landis v. Interurban Railway Co.,* 173 Iowa 466, 469, 154 N.W. 607, 608 (1915).

Both during trial, and thereafter in ruling on the plaintiff's motion to enlarge its findings, the trial court spelled out with great care the authorities supporting its view that it should consider not just the additional evidence offered by the parties but all evidence received during the first trial. The trial court also reminded counsel that our opinion providing directions for further proceedings told the parties they would have "the opportunity to offer *additional* evidence...." *Lakeside,* 344 N.W.2d at 222 (emphasis added). The trial court wrote:

> If the Supreme Court had wanted a new trial to be held rather than the reception of "additional evidence" we believe it would have said so.

The trial court correctly considered all evidence presented at the first trial, gave counsel full opportunity to make objections to its consideration of that evidence, and allowed such additional evidence as the parties wished to present. Nothing in this record suggests that the plaintiff was surprised, misled or prejudiced by the manner in which the trial court conducted the trial on remand.

## II. *Unconscionability.*

Plaintiff contends that the lease agreement was unconscionable and therefore not binding on Figi and the plaintiff as his successor in title. We have held that a bargain will be deemed unenforceable if it is "such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other." *Farmers Savings Bank v. Gerhart,* 372 N.W.2d 238, 244 (Iowa 1985) (quoting *Casey v. Lupkes,* 286 N.W.2d 204, 207 (Iowa 1979)). The burden was on plaintiff to prove the lease agreement unconscionable.

Plaintiff has not persuaded either the trial court or this court that the lease agreement was so one-sided as to meet the measure of unconscionability. With title to the parcel F dredge fill in doubt, a person in Figi's position would sensibly take a long hard look at the lease option offered by the State. Figi was under no apparent compulsion to sign, and the lease offered the benefit of use of the land at low cost for a few years in lieu of an expensive fight to obtain a quiet title decree. The lease agreement was not unconscionable.

## III. *Adequacy of Consideration.*

Plaintiff contends there was no consideration supporting the lease agreement with the State because Figi was already the accretal titleholder to the dredge fill.

When a party asserts an agreement is unenforceable for lack of consideration, we examine whether there was "a benefit to the promisor or a detriment to the promisee." *Hubbard Milling Company v. Citizens State Bank,* 385 N.W.2d 255, 258 (Iowa 1986). The record is replete with evidence that ownership of parcel F was a subject on which Figi and the commission vigorously disagreed. Negotiations over several years culminated in the written lease agreement of 1944 containing the re-

lease language. While Figi might have chosen to litigate to quiet title at that time, he instead avoided litigation by renting the parcel land at a nominal price which included release of his claim of ownership. The consideration was adequate. The lease agreement provided him benefit.

### IV. *Mistake.*

 Plaintiff also challenges the lease agreement on the ground that Figi signed it under a mistaken belief that the State owned parcel F. Plaintiff contends that Figi's mistake concerned the formation and very essence of the lease agreement, the ownership of the real estate being leased, and was the type of mutual and material mistake of fact that can vitiate a contract or release.

In *Pathology Consultants v. Gratton*, 343 N.W.2d 428, 436–38 (Iowa 1984), cited by the plaintiff, we explained in some detail the exceptional circumstances which may allow a party to set aside or reform a contract on a theory of mistake. The circumstances here, however, do not fit the plaintiff's theory that this was a mutual mistake of fact. Figi and the State did not share a mistaken belief about the facts concerning parcel F; to the contrary, the record clearly discloses that both Figi and the State claimed ownership and both were aware of the other's competing claim. To resolve the uncertainty, Figi and the State entered an agreement of compromise. Relief from a release or contract on the ground of mistake is not warranted under those circumstances; the law favors settlement of disputes between persons holding contrary views of the pertinent facts and applicable law. *See New York Life Insurance Co. v. Chittendon & Eastman*, 134 Iowa 613, 617–18, 112 N.W. 96, 99 (1907); Restatement (Second) of Contracts § 152 comment f (1981); 13 S. Williston, *Law of Contracts* § 1543, at 74–75 (1970 Jaeger ed.); 3 A. Corbin, *Corbin on Contracts* § 598, at 586 (1960).

The circumstances of this case do not support the plaintiff's theory of mistake. The release language which was an integral part of the lease agreement was binding on Figi and is equally binding on the plaintiff.

### V. *Plaintiff's Additional Allegations.*

Plaintiff presents other arguments founded on the statute of frauds, the alleged ineffectiveness of the lease to transfer title to parcel F, and the State's alleged breach of the lease agreement. We refrain from addressing those issues, however, because they were not asserted in the trial court. *See Lamp v. American Prosthetics, Inc.*, 379 N.W.2d 909, 911 (Iowa 1986). We affirm the decree entered by the trial court quieting in the State title to parcel F.

AFFIRMED.

All Justices concur except REYNOLDSON, C.J., who concurs in the result.