**CHICAGO OBSERVER, INC.,**
**Plaintiff–Appellee,**

v.

**CITY OF CHICAGO,**
**Defendant–Appellant.**

**No. 90–3552.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 20, 1991.

Decided April 5, 1991.

As Amended April 25, 1991.

Gary A. Weintraub, Chicago, Ill., for plaintiff-appellee.

Lawrence Rosenthal, Deputy Corp. Counsel, Appeals Div., Diane M. Pezanoski, Bennett W. Lasko, Office of the Corp. Counsel, Chicago, Ill., for defendant-appellant.

Before WOOD, Jr., CUDAHY, and EASTERBROOK, Circuit Judges.

EASTERBROOK, Circuit Judge.

Newsracks are ubiquitous in American cities. The city block in Chicago that comprises the federal courthouse boasts 19 racks for 11 papers or pamphlets: the *Chicago Tribune*, the *Chicago Sun–Times*, the *Wall Street Journal*, *USA Today*, the *Financial Times*, *Investor's Daily*, the *Daily Herald*, the *Southtown Economist*, the *Learning Annex*, the *Relcon Apartment Directory*, and the *Chicago Observer*. Two newsstands hawk hundreds of publications. Newsracks on the other side of the street dispense the *New York Times*, *Crain's Chicago Business*, the *Chicago Reader*, the *National Sports Daily*, *Chicago Outlines*, and *Today's Chicago Woman*. Free newspapers such as the *Windy City Times* are piled high inside the doors of shops.

Ludwig Mies van der Rohe designed our courthouse. Mies recognized that "Form follows function", a credo coined by Louis Sullivan, one of the architects responsible for rebuilding Chicago after the Fire. Sullivan, *The Tall Office Building Artistically Considered*, Lippincott's Magazine (March 1896). Function shines through form in Mies's curtain wall buildings. Function dictates form for most newsracks, too. A base or pedestal supports a box large enough to display the top half of the first page of the paper and hold 25 to 50 copies. The pedestal must be tall enough to put the paper within pedestrians' view and reach. Often a small box sits on top to collect coins and release the door latch. The three sides not used to display the paper may be emblazoned with the publication's name or devoted to advertising, usually of sports teams or contests sponsored by the publication. These ads are modest, no larger than the size of a folded newspaper.

Form follows function for the *Chicago Observer*'s boxes—but it is a different function. These boxes are 34 inches wide and 52 inches high. They have no pedestal. The faces of the boxes do not display the first page or even the name of the *Observer*. Instead they are billboards for businesses unrelated to it. The advertising posters face pedestrian traffic. The paper itself goes in a slot in the third dimension of the box, the 9 inches between the advertising faces. There is no coin box; the slot is open to the elements. The slot often faces the street, so persons who pass the boxes do not know that they offer papers. The slots in the boxes near the courthouse contain used chewing gum and other debris more often than they contain newspapers. Whether this is attributable to the great popularity of the *Observer* or the low rate of replenishment, the record does not reveal.

The *Chicago Observer*'s newsracks blossomed throughout Chicago on the weekend of June 23 and 24, 1990. Where they sprouted depended on where the advertisers wanted them. Marketing material told prospective advertisers:

We are pleased to introduce to you Chicago's new and exciting out-of-home alternative ... AD BOX.

Each AD BOX offers a bright, clean plexi-glass [sic] enclosed display for your advertising message.

Every AD BOX is strategically placed where you need to be throughout the downtown and near north sections of Chicago. Since AD BOX is the newspaper distribution container for "The Chicago Observer", our units are placed primarily in "No Parking" zones free of vehicular clutter. We put your AD BOX where YOU want it in congested commercial areas where standard out-of-home [advertising] is limited or non-existent.

At the time the *Observer* bolted its AD BOXes to street lamps and traffic signs, Chicago had no rules concerning the size or placement of newsracks.

Regulation abhors a vacuum, and the *Observer*'s novelties jolted the City Council into action. On July 12, 1990, the Council enacted an ordinance designed to get the *Observer*'s billboards off the sidewalks, while preserving the status quo for other newsracks. To make sure it hit the mark, the ordinance not only banned off-premises ads on the public way (§ 2) but also limited the size of newsracks (§ 3). Topping things off, § 4 of the ordinance forbade off-premises ads attached to newsracks. An off-premises advertisement is a sign advertising a business located more than 20 feet away. Thus a newsrack may sport ads for the newspaper, its affiliated businesses, and adjacent stores, but for nothing else.

The *Observer* immediately filed this suit under 42 U.S.C. § 1983, contending that the ordinance violates the due process and equal protection clauses of the fourteenth amendment, as well as the rights of speech and press applied to the states through that amendment. It added pendent claims under state and local law. The district court rejected all but one of its arguments. The one it accepted is that the ordinance violates the due process clause, because it allows the Commissioner of Public Works to remove a non-complying newsrack before giving its owner an opportunity for a hearing. The court issued a preliminary injunction against enforcement of the ordinance. 1990 WL 114189, 1990 U.S. Dist. LEXIS 9991 (N.D.Ill.).

■ The Commissioner quickly adopted a regulation offering a hearing to the owner of any newsrack in jeopardy of removal. The Commissioner issued a notice to the *Observer* listing the newsracks that he believes violate the ordinance. A hearing officer concluded that the *Observer*'s newsracks violate the ordinance and directed their removal. The *Observer* neither complied nor sought review in state court. So Chicago returned to the district court with a request to dissolve the injunction. Although the regulation rectifies the only defect the district judge had identified, the judge refused to vacate his injunction. He explained: "[W]hat the Commissioner has given so easily the Commissioner could take away just as easily. There is no obstruction contained in the ordinance to the Commissioner's revoking the regulation at any time the Commissioner chooses. Such unfettered discretion in the Commissioner with respect to whether there shall be notice and hearings does not provide sufficient protection to comport with due process in the context of removal of property as intertwined with First Amendment free speech and free press rights as newsracks."

Repeating an argument that did not persuade the district court, Chicago contends that factual disputes are so unlikely to arise that the City need not offer a hearing before removing a newsrack under the ordinance. Unless there is a dispute, the City observes, there is no point to a hearing. *Codd v. Velger*, 429 U.S. 624, 97 S.Ct. 882, 51 L.Ed.2d 92 (1977); *Altenheim German Home v. Turnock*, 902 F.2d 582 (7th Cir. 1990). Although there could be factual questions (Is the box within 20 feet of the business it plugs? Does the publication own the business being advertised?), these are so rare, and the risk of erroneous removal is so tiny, that prior hearings are unnecessary, the City submits. See *Math-*

ews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) (due process requires procedures that hold the risk of error to a level appropriate to the interests at stake); Sutton v. Milwaukee, 672 F.2d 644 (7th Cir.1982) (the risk of error in towing cars on account of unpaid tickets is so small that prior hearings are unnecessary). We do not decide whether these arguments carry the day, because the Observer has had a hearing and has been promised hearings in the future. Having received all the process due on its own theory, the Observer has no remaining procedural dispute with the City.

Although the interaction of the first amendment with the due process clause gives the Observer standing to contest the adequacy of the procedures to be applied tomorrow, Lakewood v. Plain Dealer Publishing Co., 486 U.S. 750, 755–69, 108 S.Ct. 2138, 2143–50, 100 L.Ed.2d 771 (1988), the Commissioner's regulations satisfy any standard. Chicago offers hearings before a neutral arbiter, the right to be represented by counsel, to present evidence, to cross-examine adverse witnesses. The Observer wants nothing extra. It stands on the district court's observation that what the Commissioner has wrought, the Commissioner may put asunder.

Regulations are transient—but then so are statutes. What a legislature enacts today, it may repeal tomorrow. If a § 5 of the ordinance had guaranteed a hearing in the same terms as the regulation, the Observer would be no better off. Nothing ensures the permanence of any legal rule. The fourteenth amendment guarantees that the state will not take life, liberty, or property without due process. It does not specify who within the state shall extend the opportunity for a hearing. Apart from the republican form of government clause (Art. IV § 4), not implicated here, the Constitution is silent on how states apportion the powers of government. Whalen v. United States, 445 U.S. 684, 689–90 n. 4, 100 S.Ct. 1432, 1436–37 n. 4, 63 L.Ed.2d 715 (1980); Mayor of Philadelphia v. Educational Equality League, 415 U.S. 605, 615 n. 13, 94 S.Ct. 1323, 1330 n. 13, 39 L.Ed.2d 630 (1974); Highland Farms

Dairy, Inc. v. Agnew, 300 U.S. 608, 612, 57 S.Ct. 549, 551, 81 L.Ed. 835 (1937); Prentis v. Atlantic Coast Line Co., 211 U.S. 210, 225, 29 S.Ct. 67, 69, 53 L.Ed. 150 (1908); Dreyer v. Illinois, 187 U.S. 71, 83–84, 23 S.Ct. 28, 32, 47 L.Ed. 79 (1902); Alleghany Corp. v. Haase, 896 F.2d 1046, 1053 (7th Cir.1990) vacated as moot in Dillon v. Alleghany Corp., —— U.S. ——, 111 S.Ct. 1383, 113 L.Ed.2d 441 (1991); Falls v. Town of Dyer, 875 F.2d 146, 147–48 (7th Cir.1989); Coniston Corp. v. Village of Hoffman Estates, 844 F.2d 461, 469 (7th Cir.1988); United Beverage Co. v. Indiana Alcoholic Beverage Comm'n, 760 F.2d 155 (7th Cir. 1985); Ware v. Gagnon, 659 F.2d 809, 812 (7th Cir.1981). How Chicago divides powers between the City Council and the Commissioner of Public Works is irrelevant to the constitutional entitlement. A federal court may not demand that cities act only through legislatures. Chicago now offers hearings before removing newsracks. How that was accomplished is of no constitutional moment.

■ We come to the Observer's other constitutional arguments, which it advances in defense of its judgment. They are insubstantial. Cities may curtail visual clutter, for aesthetic and safety reasons. Los Angeles v. Taxpayers For Vincent, 466 U.S. 789, 805–07, 104 S.Ct. 2118, 2128–30, 80 L.Ed.2d 772 (1984). Newsracks the size of sandwich boards reduce the quality of life, a city may conclude. Chicago does not regulate the viewpoint of publications; it is concerned only with size and advertising. The limit on off-premises advertisements makes no exceptions for favored causes. The Observer's argument that ads may be regulated only as part of a comprehensive beautification plan, which Chicago lacks, was rejected foursquare in Taxpayers For Vincent, 466 U.S. at 807 n. 25, 104 S.Ct. at 2130 n. 25 and Metromedia, Inc. v. San Diego, 453 U.S. 490, 511–12, 101 S.Ct. 2882, 2894, 69 L.Ed.2d 800 (1981). The government must leave ample channels for communication, but Chicago teems with ads and with publications that do not need "AD BOXes" for distribution.

Like the advertising limits, the size limits are neutral with respect to content and viewpoint. Dozens of other publications

find it possible to distribute from news-racks of modest size. The *Observer* is smaller than other newspapers (8½ × 11¼ folded, compared with 11⅜ × 14 for the *New York Times*) and so should be able to survive using boxes the dimensions of which are satisfactory to these larger papers. True, the City's maximum sizes are arbitrary. All lines—all rules—are arbitrary. Chicago *had* to use bright-line rules, given *Lakewood v. Plain Dealer*, which finds discretion constitutionally objectionable. That a different choice of dimensions would have allowed the *Observer* to continue using its "AD BOXes" is no objection to this law. Whenever government draws a line, there will be cases close to the mark. One can always claim that a small change could have accommodated more conduct, at a little sacrifice in the government's objective. Choosing how much to accommodate at what sacrifice in other objectives is precisely the business of government, for the branches responsible to the people. *Citizens for John W. Moore Party v. Board of Election Commissioners*, 794 F.2d 1254, 1258–59 (7th Cir.1986).

If as the *Observer* says the City tailored the dimensions in the ordinance to freeze out its boxes while not affecting others, what of it? The *Observer*'s "AD BOXes" were nonpareil. No newspaper has a right to demand that burdensome, and unnecessary, regulation be fixed on others. Courts adjure government to use the least restraint essential to the task. Chicago did so and deserves praise rather than condemnation.

None of the *Observer*'s remaining arguments requires comment. The preliminary injunction must be reversed because the *Observer* has no chance of success on the merits. Indeed, the City is entitled to judgment without further ado. The *Observer* has not suggested that it holds more evidence it could offer at a trial, and we cannot imagine what additional evidence could aid its cause. Litigation is costly not only for the litigants but also for parties in other cases waiting in the queue for judicial attention. Once it becomes clear that additional proceedings are pointless, the court should bring the case to a close. *Cronin v. Department of Agriculture*, 919 F.2d 439, 445 (7th Cir.1990). That time has come to this litigation. The injunction is vacated, and the case is remanded with instructions to enter judgment for the defendant.