Richard GRAFF, Plaintiff,

v.

CITY OF CHICAGO, an Illinois munici-
pal corporation, Richard M. Daley,
Mayor of the City of Chicago, Defen-
dants.

No. 91 C 1056.

United States District Court,
N.D. Illinois, E.D.

May 28, 1992.

Matthew J. Piers, Jonathan A. Rothstein, Gessler, Flynn, Fleischmann, Hughes & Socol, Ltd., Chicago, Ill., for plaintiff.

Kelly Raymond Welsh, City of Chicago, Law Dept., Corp. Counsel, Gail A. Niemann, Eileen Teresa Pahl, Ruth M. Moscovitch, City of Chicago, Law Dept., Corp. Counsel, Chicago, Ill., for defendants.

### MEMORANDUM OPINION AND ORDER

LINDBERG, District Judge.

Plaintiff, Richard Graff, filed a first amended complaint alleging claims against defendants, City of Chicago and Mayor Richard M. Daley, arising out of defendant City of Chicago's ordinances, both new and old, regulating newsstands. Specifically, Count I alleges that the new ordinance is an unconstitutional prior restraint on speech; Count II alleges that the new ordinance denies equal protection of the laws; and Count III alleges that the old ordinance denied plaintiff equal protection of the laws.

Plaintiff has filed an emergency motion for a temporary restraining order requesting that this court "enter an order temporarily restraining and temporarily enjoining Defendants from enforcing the removal provision of the [new] ordinance pending resolution of this action." Because ruling on this motion requires a consideration of the likelihood of plaintiff's being successful on the merits of portions of the first amended complaint, the issues before the court on this motion are inextricably intertwined with issues raised by defendants' previously filed and briefed motion to dismiss plaintiff's first amended complaint. Therefore, the court will first consider defendant's motion to dismiss.

Although in Count I plaintiff purports to challenge the constitutionality of the new ordinance both on its face and as applied, it is apparent in reviewing the specific defects alleged that plaintiff is only challenging the facial validity of the new ordinance in Count I. Moreover, from the documents concerning the motion for a

temporary restraining order, it can be discerned that plaintiff has not applied for and been denied a permit under the new ordinance, so a challenge to the ordinance as applied to plaintiff would not lie at this time.

Certain principles then govern this challenge:

[W]hen a licensing statute allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license....

At the root of this long line of precedent is the time-tested knowledge that in the area of free expression a licensing statute placing unbridled discretion in the hands of a government official or agency constitutes a prior restraint and may result in censorship....

....

[W]e have previously identified two major First Amendment risks associated with unbridled licensing schemes: self-censorship by speakers in order to avoid being denied a license to speak; and the difficulty of effectively detecting, reviewing, and correcting content-based censorship "as applied" without standards to measure the licensor's action. It is when statutes threaten these risks to a significant degree that courts must entertain an immediate facial attack on the law. Therefore, a facial challenge lies whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers. This is not to say that the press or a speaker may challenge as censorship any law involving discretion to which it is subject. The law must have a close enough nexus to expression, or to conduct commonly associated with expression, to pose a real and substantial threat of the identified censorship risks.

....

Of course, the city may require periodic licensing, and have special licensing procedures for conduct commonly associated with expression; but the Constitution requires that the city establish neutral criteria to insure that the licensing decision is not based on the content or viewpoint of the speech being considered. *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 756–58, 760–61, 108 S.Ct. 2138, 2143–46, 100 L.Ed.2d 771 (1988). The city's new ordinance is not subject to a facial challenge on first amendment grounds. *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 756–58, 760–61, 108 S.Ct. 2138, 2143–46, 100 L.Ed.2d 771 (1988).

■ Plaintiff argues that the new ordinance is not content-neutral because it provides that "[a] newspaper stand shall be used for no purpose other than the exhibition and sale of newspapers, periodicals and similar publications." This is a restriction on the use of a newspaper stand that is based upon the type of merchandise sold, and not the content of the expression contained in or embodied by the type of merchandise sold. In other words, the content of the items permitted to be sold may be similar or even identical to the content of the items not permitted to be sold. This provision moreover does not preclude items not permitted to be sold in newsstands from being sold by other merchants with other sorts of businesses. In short, the provision challenged is content-neutral.

■ Plaintiff also contends the new ordinance's size limitation is a content-based restriction on speech because:

By limiting the size of a stand, the City limits the number of publications that may be sold. This requires the operator to chose [sic] the types of publications that may be sold. When the size limitation is coupled with the limitation on the type of materials that may be sold and, particularly, the preference for daily publications contained in the ordinance, it will require the operator to prefer and select certain types of speech over others.

Contrary to plaintiff's claim, this does not pose "precisely the risk of self-censorship found unacceptable by the Court in *City of*

*Lakewood.*" It does not because the pressure leading to the selection is not pressure to select items expressive of certain views; rather, it is a requirement to select a limited number of items of the type permitted by the ordinance due to the limited space permitted to a newsstand. In other words, while the ordinance may force a newsstand operator to pick and choose among items in the possible universe of items the newsstand could stock, the ordinance does not in any way pressure a newsstand operator to carry or not carry items having a particular content.

■ Plaintiff contends that even if the new ordinance is content-neutral, defendants have failed to establish that it is a reasonable time, place, and manner restriction. Plaintiff contends that the sole interest asserted is "the accommodation of multiple uses of the public way and public safety." Plaintiff further contends that "There is no showing that the arbitrary limitation on the number of permits issued to those extant and the size limitations are narrowly tailored to serve those interests." It must of course be recognized that there is only so much room on even the roomiest of public ways, and that the more of it is taken up by newsstands the less of it is available for other uses. Thus, number and size limitations on newsstands appear ideally suited to serve the interests asserted.

■ Plaintiff contends that:

The ordinance caps the number of permits at an arbitrary and, at this stage of the litigation, unknown number. It requires any person wishing to operate a newsstand to apply for such permits as may be available. The ordinance vests complete discretion in the Commissioner of Public Works to issue all or none of the existing permits and does not contain any standards regarding how a determination is to be made whether and how many permits to issue.

The ordinance provides:

No new permit for a newspaper stand shall be issued on or after the effective date of this ordinance; provided that permits that have expired or have been re-

voked may be reissued as provided in this Article.

Municipal Code of Chicago, Ill, § 10–28–130. In addition, the ordinance provides:

[A]ll newspaper stand permits issued prior to the effective date of this section shall expire on January 1, 1992; provided that any such permit for which no newspaper stand is in existence on the effective date of this section shall expire on such effective date. Such permits may not be renewed but may be reissued by the Commissioner as provided in this Article.

Municipal Code of Chicago, Ill, § 10–28–135(a). Finally:

The Commissioner of Public Works may from time to time reissue all or a portion of those permits that have been revoked.

Municipal Code of Chicago, Ill, § 10–28–135(a). Plaintiff is correct that the ordinance contains no standards governing the exercise of the discretion to determine the number of newspaper stand permits issued by the Commissioner of Public Works. The combined effect of the provisions quoted and the lack of standards regarding the number of permits to be issued is to vest unfettered discretion over the number of permits in the Commissioner of Public Works.

However, this unfettered discretion is insufficient to support a facial challenge of the ordinance. When reissuing permits, the Commissioner of Public Works is required to:

[A]dvertise in a newspaper of general circulation within the City the availability of such permits at least 10 days prior to accepting applications for the permits.

Municipal Code of Chicago, Ill, § 10–28–135(b). The ordinance states in detail how the Commissioner is to consider such applications. It includes provisions concerning time limits for consideration of the applications; recommendations (and procedures governing the making of recommendations) by the City Council and other Departments of the City of Chicago; explicit standards governing those making recommendations; and, crucially, explicit standards governing

the Commissioner of Public Works in approving or denying a permit. See Municipal Code of Chicago, Ill, §§ 10–28–150, 10–28–160.

Thus, the only area in which the Commissioner has unfettered discretion is in determining how many permits to issue. Thereafter, the Commissioner's discretion is governed by content-neutral standards. This ordinance does not threaten:

elf-censorship by speakers in order to avoid being denied a license to speak; and the difficulty of effectively detecting, reviewing, and correcting content-based censorship "as applied" without standards to measure the licensor's action.

*City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 760, 108 S.Ct. 2138, 2145, 100 L.Ed.2d 771 (1988). As the ordinance does not "give[ ] a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers," it is not subject to a facial challenge on First Amendment grounds. *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 760, 108 S.Ct. 2138, 2145, 100 L.Ed.2d 771 (1988).

Plaintiff also claims that "the standards are fatally vague as they call upon the Commissioner to make subjective aesthetic judgments about whether the newsstand fits in with its surroundings." The standards established by the ordinance are:

(1) [W]hether the design, materials and color scheme of the newspaper stand comport with and enhance the quality and character of the streetscape, including nearby development and existing land uses;

(2) whether the newspaper stand complies with this Code:

(3) whether the applicant has previously operated a newspaper stand at that location;

(4) the extent to which services that would be offered by the newspaper stand are already available in the area;

(5) the number of daily publications proposed to be sold from the newspaper stand; and

(6) the size of the stand relative to the number of days the stand will be open and operating.

Municipal Code of Chicago, Ill, § 10–28–160(a). Plaintiff is challenging here the first of these standards. That standard, though involving aesthetic considerations, does not make the ordinance facially invalid. See *Chicago Observer, Inc. v. City of Chicago*, 929 F.2d 325, 328 (7th Cir.1991) (in reversing a temporary restraining order preventing the removal of newsracks, the court said "[c]ities may curtail visual clutter, for aesthetic ... reasons"). The aesthetic judgment is not an unfettered one. It requires a consideration of "whether the design, materials and color scheme of the newspaper stand comport with and enhance the quality and character of the streetscape, including nearby development and existing land uses." Municipal Code of Chicago, Ill, § 10–28–160(a)(1). This standard does not threaten:

[S]elf-censorship by speakers in order to avoid being denied a license to speak; and the difficulty of effectively detecting, reviewing, and correcting content-based censorship "as applied" without standards to measure the licensor's action.

*City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 760, 108 S.Ct. 2138, 2145, 100 L.Ed.2d 771 (1988). The standard therefore does not "give[ ] a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers," and so does not cause the ordinance to be subject to a facial challenge on First Amendment grounds. *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 760, 108 S.Ct. 2138, 2145, 100 L.Ed.2d 771 (1988).

Plaintiff contends that:

The fact that an ordinance works a prior restraint on speech gives rise to a presumption of unconstitutionality. Moreover, for a prior restraint to be sustained, it must be accompanied by adequate procedural safeguards. The ordinance must: (1) require the licensor to act on the permit in a brief specified

period, (2) provide for prompt judicial review, and (3) place the burden on the licensor to institute such proceedings ...

The Amended Complaint alleges the absence of these procedural safeguards. The ordinance permits the Commissioner to deny a license and to remove unpermitted newsstands without any prior judicial review. Moreover, for applicants operating newsstands near landmarks, like the plaintiff in this case, an application will not even be considered until approved by the Landmark Commission. The ordinance does not contain any time limit within which the Commission need act.

As the prior discussion has demonstrated, this argument is wrong in its premise that the ordinance works a prior restraint on speech. It is instead a proper, content-neutral licensing scheme not subject to challenge on its face. This argument is moreover wrong on some of its facts, specifically its claim that there are no time limits for action on permits for newsstands near landmarks set forth in the ordinance. The ordinance provides:

Any action denying or approving a permit application under subsection (a) of this section shall be made by the Commissioner of Public Works not less than 35 and not more than 65 days after the application is filed with the Commissioner. Any action denying or approving a permit application under subsection (b) [governing renewals of previously issued permits] shall be made by the Commissioner of Public works within 10 days after the application is filed with the Commissioner.

Municipal Code of Chicago, Ill, § 10–28–160(c). The provision that plaintiff claims eliminates this time limit provides:

Notwithstanding any provision to the contrary, any application under this subsection (a) for a newspaper stand to be located on property on which a designated landmark is situated, or on the public way between the street and the property line of such property, shall be subject to permit review by the Commission on Chicago Historical and Architectural Landmarks pursuant to Chapter 2–120 of this Code. An application for such a newspaper stand or for written approval to substantially remodel such a newspaper stand shall not be considered filed with the Commissioner of Public Works until the application is approved by the Commission pursuant to that Chapter.

Municipal Code of Chicago, Ill, § 10–28–160(a). Plaintiff claims in a footnote that time limits are not supplied by the reference to the "Landmark Commission ordinance as it likewise contains no time limits." However, that ordinance provides:

Within 15 days of its receipt of an application for a permit ... the commission shall issue in writing a preliminary decision approving or disapproving the application ...

Municipal Code of Chicago, Ill, § 2–120–760.

If the commission finds that the proposed work will not adversely affect any significant historical or architectural feature of the improvement or of the district, and is in accord with the Standards for Rehabilitation set forth by the United States Secretary of the Interior at 36 C.F.R. 67, as amended from time to time, as well as the commission's published procedures, the commission shall issue a preliminary approval. Upon receipt of the commission's preliminary approval, the appropriate city department shall proceed in its usual manner with its own review of the application.

Municipal Code of Chicago, Ill, § 2–120–770.

If the commission finds that·the proposed work will adversely affect or destroy any significant historical or architectural feature of the improvement or the district, or is inappropriate or inconsistent with the designation of the structure, area or district, or is not in accordance with the spirit and purposes of this ordinance, or does not comply with the Standards for Rehabilitation established by the Secretary of the Interior, the commission shall issue a preliminary decision disapproving the application for permit....

Municipal Code of Chicago, Ill, § 2–120–780.

> Within 10 days after receiving the commission's notice of preliminary disapproval, the applicant for permit may request in writing an informal conference before the commission for the purpose of securing compromise regarding the proposed work.... The commission shall hold such conference within 15 days after receipt of the request....

Municipal Code of Chicago, Ill, § 2–120–790.

> If within 30 days after the conclusion of an informal conference under Section 2–120–790, the commission and applicant for permit have failed to reach accord or if the applicant fails to request an informal conference within 10 days of receiving notice as provided in Section 2–120–790, the commission shall hold a public hearing on the permit in accordance with Sections 2–120–670 and 2–120–680. The public hearing shall be concluded within 90 days after the commission has disapproved the permit unless the applicant requests or agrees in writing to an extension of time. The commission shall, within 30 days after the conclusion of the hearing, issue a written decision approving or disapproving the permit application. The decision shall contain findings of fact that constitute the basis for the decision consistent with the criteria in Section 2–120–740. The commission shall send written notice of its decision to the applicant by certified mail, return receipt requested....

Municipal Code of Chicago, Ill, § 2–120–800. As can be seen from the provisions of the ordinance quoted, there are definite time limits set for decision first by the Landmark Commission and, if the application is not disapproved by the Landmark Commission, by the Commissioner of Public Works.

Moreover, plaintiff is legally incorrect on the claim that the ordinance is unconstitutional because it does not "provide for prompt judicial review, and ... place the burden on the licensor to institute such proceedings." A system of administrative hearing and review can be sufficient. See *Chicago Observer, Inc. v. City of Chicago,* 929 F.2d 325, 328 (7th Cir.1991). See also Municipal Code of Chicago, Ill, § 2–120–810 (providing that "[t]he written decision of the [Landmark] commission approving or disapproving an application for a permit under Section 2–120–800 shall be on the date it issues a final administrative decision appealable to the Circuit Court of Cook County under the provisions of the Illinois Administrative Review Act.").

In any event, even if plaintiff were correct in his claims in this argument, the principles cited with respect to prior restraints do not apply to the newsstand licensing ordinance at issue.

■ Plaintiff contends that the ordinance violates the first amendment by setting variable fees for permits. Plaintiff argues:

> While the City may charge a licensing fee for operation of a newsstand in a traditional public forum, it can charge no more than the cost of administering the regulatory scheme.... The Amended Complaint pleads a violation of this requirement in that the ordinance on its face allows for variable fees having nothing to do with the cost of administering the licensing scheme.

This argument, regardless of what its merits or lack thereof in challenging the ordinance as applied might be, does not support a challenge to the ordinance on its face. The provision of the ordinance in question states:

> The annual fee for a newspaper stand permit shall be based on the land values and the square footage of public property occupied by the newspaper stand, including any rack, awning, or overhang attached thereto, and shall be determined by the Commissioner of General Services in accordance with regulations promulgated by him for computing rental values for occupancies of public property. In no event shall the annual fee be less than $50; provided, however, the annual fee for a newspaper stand that is open and in operation only on Saturdays and/or Sun-

days shall be one-half of the fee that would otherwise be applicable.

Municipal Code of Chicago, Ill, § 10–28–165. This provision regarding fees is not content-based and does not threaten:

> [S]elf-censorship by speakers in order to avoid being denied a license to speak; and the difficulty of effectively detecting, reviewing, and correcting content-based censorship "as applied" without standards to measure the licensor's action.

*City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 760, 108 S.Ct. 2138, 2145, 100 L.Ed.2d 771 (1988). Because it does not "give[ ] a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers," it provides no basis for a facial challenge to the ordinance on First Amendment grounds. *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 760, 108 S.Ct. 2138, 2145, 100 L.Ed.2d 771 (1988).

Accordingly, Count I does not state a claim upon which relief may be granted. As it is apparent that plaintiff has not applied and been rejected for a permit under the new ordinance, plaintiff cannot state a claim challenging the new ordinance on first amendment grounds, either on its face or as applied. See *City of Lakewood v. Plain Dealer Publishing Co.*, 486 U.S. 750, 756–57, 108 S.Ct. 2138, 2143, 100 L.Ed.2d 771 (1988). Count I will therefore be dismissed with prejudice.

With respect to Count II, plaintiff argues:

> The Amended Complaint sets forth specific facts regarding disparate treatment of newsstands and other uses of the public way as well as between classes of permit holders. The issues raised by this challenge have not been previously litigated. They include: (1) Whether the City may require a newsstand operator to obtain approval from the Landmark Commission for operation of a newsstand at or near a designated landmark when other users of the public way under these circumstances are not

required to obtain approval and (2) Whether the City may establish a size limitation when it does not establish any limitation for other uses of the public way such as sidewalk cafes.

The answer to the second question is that the city may establish a size limitation for newsstands "when it does not establish any limitation for other uses of the public way such as sidewalk cafes." See *Chicago Observer, Inc. v. City of Chicago*, 929 F.2d 325, 328–29 (7th Cir.1991) (newsrack size limits which were not a part of a comprehensive beautification plan were not unconstitutional). On the first question, plaintiff is once again incorrect in his statement of what the Municipal Code of Chicago provides. The Landmark Commission's review and approval, parts of which were previously quoted, is not limited solely to newsstands. Rather, it applies generally to "alteration, construction, reconstruction, erection, demolition, relocation, or other work" in "any area, place, building, structure, work of art or other object for which the commission has made a preliminary determination of landmark status or which has been designated as a 'Chicago Landmark'" and specifically requires the review "where a permit would allow the construction or erection of any sign or billboard within the public view which may be placed on, in, or immediately adjacent to any improvement which constitutes all or part of any landmark or proposed landmark." Municipal Code of Chicago, Ill, § 2–120–740. While there are undoubtedly some possible uses of the public way near landmarks not reviewed by the Landmark Commission under the City's ordinances, such omissions are not sufficient to render the ordinance facially invalid on equal protection grounds. Count II, making an equal protection challenge to the ordinance on its face, will be dismissed with prejudice.

Counts I and II being dismissed with prejudice, there remains no claim with respect to the new ordinance. That being the case, there is no likelihood that plaintiff will be successful on the merits of any claim that could provide the basis for enjoining enforcement of the new ordinance

and, consequently, plaintiff's motion for a temporary restraining order will be denied.

With respect to Count III of the first amended complaint, the court finds that there are factual questions precluding dismissal. However, the inclusion of both the City of Chicago and Mayor Richard M. Daley in his official capacity is duplicitous, because a suit against the mayor in his official capacity is the same as a suit against the City of Chicago. Therefore, Count III will be dismissed with respect to the claim against Mayor Richard M. Daley in his official capacity but will not be dismissed against the City of Chicago.

ORDERED: Plaintiff's motion for a temporary restraining order is denied.

Defendants' motion to dismiss plaintiff's first amended complaint is granted in part and denied in part.

The portion of the motion to dismiss directed at Counts I and II, and at the Count III's claim with respect to Mayor Richard M. Daley in his official capacity is granted. Counts I and II of the first amended complaint are dismissed with prejudice. The claim of Count III of the first amended complaint against Mayor Richard M. Daley in his official capacity is dismissed.

The portion of the motion to dismiss addressed to the claim of Count III of the first amended complaint against the City of Chicago is denied.