PENN CENTRAL CORPORATION,
Plaintiff–Appellant,

v.

U.S. RAILROAD VEST CORPORATION; Beverly D. Crone, Auditor of St. Joseph County; et al., Defendants–Appellees.

No. 91–2608.

United States Court of Appeals,
Seventh Circuit.

Argued Dec. 2, 1991.

Decided Feb. 4, 1992.

Rehearing and Rehearing En Banc
Denied March 3, 1992.

Robert J. Palmer, May, Oberfell & Lorber, South Bend, Ind., Matthew J. Siembieda (argued), Alexander D. Bono, Randi S. Hoffman, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., Robert J. Siverd, George F. Carr, Penn Central Corp., Cincinnati, Ohio, for plaintiff-appellant.

John C. Hamilton (argued), Doran, Blackmond, Ready, Hamilton & Williams, Mitchell R. Heppenheimer, South Bend, Ind., for defendants-appellees.

Before POSNER and MANION, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

POSNER, Circuit Judge.

Suppose that Indiana passed a law which said that if you file an affidavit that your neighbor's property has been abandoned and really belongs to you, then after six months the property really *will* be yours—period—just by virtue of your filing the affidavit. There would be no doubt that the law violated the due process clause of the Fourteenth Amendment. A state is not allowed to take a person's property without notice and an opportunity for a hearing and give it to someone else. Remarkably, that is what the State of Indiana *has* done, and we must decide whether it makes a constitutional difference that the law is confined to abandoned railroad property and that the railroad may be able to get its property back by means of a quiet-title action.

When the Penn Central Transportation Company was reorganized in the 1970s, its operating rail assets were transferred to the newly created Conrail pursuant to the Regional Rail Reorganization Act of 1973, 45 U.S.C. §§ 701 *et seq.* But Penn Central retained its other assets, mainly real estate, including (it alleges) certain "abandoned" rail lines in Indiana. We put the word in quotation marks to distinguish between two senses of abandonment. One is the abandonment of rail *service* pursuant to order of the Interstate Commerce Commission, as in *Illinois v. ICC,* 709 F.2d 1186 (7th Cir.1983). All the lines at issue in the present case have been abandoned in that sense. The other sense, the sense in which the word is used in the law of property, refers to the relinquishment of title to property. The senses are related. If the only interest a railroad has in a piece of land is a right of way—an easement for rail use—the abandonment of rail service automatically terminates the interest, so that the exclusive rights over the land revert to the owner of the fee simple. *National Wildlife Federation v. ICC,* 850 F.2d 694, 702–04 (D.C.Cir.1988). But a railroad might—Penn Central argues it does—own the land under its tracks in fee simple, in which event the abandonment of rail service would not affect its property right at all.

The land in question was acquired for railroad use by predecessors of the Penn Central up to a century ago or more under deeds that do not always make crystal clear the nature of the interest con-

veyed to the railroad. The presumption is that a deed to a railroad or other right of way company (pipeline company, telephone company, etc.) conveys a right of way, that is, an easement, terminable when the acquirer's use terminates, rather than a fee simple. *Brown v. Penn Central Corp.,* 510 N.E.2d 641, 644 (Ind.1987); *Ross, Inc. v. Legler,* 245 Ind. 655, 199 N.E.2d 346 (1964); *Highland Realty Co. v. City of San Rafael,* 46 Cal.2d 669, 678, 298 P.2d 15, 20 (1956); *Sherman v. Petroleum Exploration,* 280 Ky. 105, 132 S.W.2d 768 (1939); *Johnson v. Ocean Shore R.R.,* 16 Cal.App.3d 429, 94 Cal.Rptr. 68 (1971). Transaction costs are minimized by undivided ownership of a parcel of land, and such ownership is facilitated by the automatic reuniting of divided land once the reason for the division has ceased. If the railroad holds title in fee simple to a multitude of skinny strips of land now usable only by the owner of the surrounding or adjacent land, then before the strips can be put to their best use there must be expensive and time-consuming negotiation between the railroad and its neighbor—that or the gradual extinction of the railroad's interest through the operation of adverse possession. It is cleaner if the railroad's interest simply terminates upon the abandonment of railroad service. A further consideration is that railroads and other right of way companies have eminent domain powers, and they should not be encouraged to use those powers to take more than they need of another person's property—more, that is, than a right of way. *Henry v. Columbus Depot Co.,* 135 Ohio St. 311, 20 N.E.2d 921 (1939). But all this said, there is nothing to prohibit a farmer or other landowner from selling outright to the railroad a strip of land for the railroad's tracks; and if that is how the matter was handled with respect to some or all of the parcels involved in this case, Penn Central remains their owner today, save as its rights may have been extinguished by adverse possession.

Enacted in 1987, the challenged statute, which is codified at Ind.Code §§ 8–4–35–4 through –7, deems railroad rights of way abandoned if the ICC has authorized the abandonment of railroad service over the right of way and the railroad has removed the tracks, ties, and other rail equipment from it. Once abandoned, "the railroad's interest vests in the owner of fee simple real property with a deed that contains a description of the real property that includes the right-of-way," or, if there is no such deed, "in the owner of the adjoining fee." To establish his record title, the new owner need only file an affidavit describing the right of way and stating that it has vested in him. Within 180 days of receiving the affidavit the railroad shall execute and deliver to the affiant "a quitclaim deed for the portion of the right-of-way described in the affidavit." The railroad may charge $100 for the deed. If the railroad fails to deliver the deed within the specified period, the new owner may, upon filing a further affidavit to that effect, "record the affidavit to establish record title."

A number of owners of real property in Indiana have filed affidavits of title to rail lines allegedly abandoned by Penn Central. The suit is against some of these owners, against a corporation (U.S. Railroad Vest) that for a fee assists owners in using the statute to obtain title to abandoned rail lines, and against a county auditor (and the county) who has indicated that upon the expiration of the 180 days without Penn Central's issuing a deed she will record the railroad's interest in the name of the affiants on the county tax rolls. Penn Central sought a preliminary injunction against enforcement of the statute, which was denied, and it has appealed. 28 U.S.C. § 1292(a)(1). We declined to stay the operation of the statute. Since Penn Central has decided neither to bring any quiet-title actions until the resolution of the appeal nor to issue any quitclaim deeds, the county auditor has recorded several transfers of what Penn Central claims is its fee simple property.

The main ground on which the district judge refused to issue a preliminary injunction is that the statute is constitutional when considered in the setting of the whole law of Indiana, which includes a procedure for determining title to real property: the quiet-title action. The challenged statute applies only to abandoned *rights of way.*

If someone demands a quitclaim deed to property that the railroad (here, the ex-railroad) actually owns in fee simple, he is outside the statute and therefore could not invoke it as a defense to a quiet-title suit by the railroad.

The defendants defend the district judge's decision on his ground but also offer another that we are obliged to consider first: that Penn Central has no standing to maintain this suit because it has not proved that it actually owns the properties claimed by the defendants under the statute. We are baffled by the argument. The statute, manifestly directed against Penn Central and other owners of railroad property interests in Indiana, requires Penn Central to issue quitclaim deeds upon the filing of affidavits with it, and if Penn Central fails to do this the affiant can obtain record title to property that Penn Central claims to own simply by recording his claim. If Penn Central is not injured by the operation of the statute, who is? Of course if it has no fees simple, just rights of way that expired when the ICC authorized it to abandon rail service and the rail equipment and facilities were removed, its property rights cannot be infringed by the statute; but this cannot be assumed so early in the litigation. Some of the old deeds appear to grant land to Penn Central's predecessors in fee simple. Maybe the appearance can be overcome by the presumption of which we spoke earlier, but this is not sufficiently clear that we can pronounce Penn Central so bereft of a potential interest in the application of the statute as to be precluded from litigating its constitutionality.

That brings us to the merits of the appeal. The rule is that a state cannot take a person's property without giving him an opportunity for a hearing *in advance of the taking,* unless there is a good reason— an emergency, for example, or the sheer infeasibility of a predeprivation hearing, or the demonstrable adequacy of postdeprivation process—for dispensing with the requirement of a predeprivation hearing. *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313, 70 S.Ct. 652, 656–57, 94 L.Ed. 865 (1950); *Logan v. Zim-*

*merman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982); *Connecticut v. Doehr,* —— U.S. ——, 111 S.Ct. 2105, 2109, 2115, 115 L.Ed.2d 1 (1991); *Saukstelis v. City of Chicago,* 932 F.2d 1171, 1172–73 (7th Cir.1991); *Cholewin v. City of Evanston,* 899 F.2d 687, 689 (7th Cir.1990); *Kielmar v. Commissioner,* 884 F.2d 959, 963 (7th Cir.1989); *Reardon v. United States,* 947 F.2d 1509, 1518–23 (1st Cir.1991) (en banc); *United States v. Premises & Real Property at 4492 S. Livonia Rd.,* 889 F.2d 1258, 1260–61, 1265 (2d Cir.1989). We need not dwell overmuch on these exceptions (on which see *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990)) because the defendants make no effort to show that this case is within any of them. We understand them to be arguing that although the Indiana statute contains no provision for a hearing—whether before or after the property right is taken away—Penn Central can obtain a predeprivation hearing by bringing suit under Indiana's quiet-title statute. Ind.Code § 34–1–48–20.

They are correct that the right to a hearing need not be conferred in the same statute that authorizes the deprivation. See, e.g., *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). And they are correct that the quiet-title statute authorizes Penn Central to sue anyone who tries by the filing of an affidavit to obtain title to property that actually belongs to the railroad—property that because it is not a mere right of way is beyond the intended reach of the abandonment statute. But to obtain in such a suit a hearing *and* decision before the 180 days expire and the affiant is entitled to record the railroad's property as his own—before in other words the property right is gone—hardly seems feasible. The railroad could, it is true, ask for a preliminary injunction in its quiet-title suit, just as it has done in the present suit. But there is no assurance that a hearing on its request would be scheduled and the injunction issued before the 180 days were up. We must not suppose that the railroad would be suing on the day it received the affidavit. It would need time to investi-

gate—to study the old deed and decide whether its interest was a fee simple or a mere right of way.

Statutes of limitations for suits on real property are long, perhaps partly in recognition of the fact that the optimal precomplaint inquiry for such a suit may be lengthy; but let us ignore that possibility and suppose that the railroad could on average bring a suit founded on a reasonable precomplaint investigation three months after receiving the statutory notice that someone was trying to take away "its" property. That would leave it only three more months within which to obtain a determination, preliminary or final, of its property right before the right would be gone. There is no Speedy Trial Act for quiet-title suits in Indiana. Such suits, the origins of which are medieval, 1 *Pomeroy's Equity Jurisprudence* §§ 244–248 (5th ed., Spencer W. Symons ed. 1941), and which entered the twentieth century trailing the signs of their origins, continue to have the reputation of being cumbersome, slow, costly, tricky, and weak. *Lakeside Boating & Bathing, Inc. v. State*, 402 N.W.2d 419, 422 (Ia.1987); *Register v. Kenai Peninsula Borough*, 667 P.2d 1236, 1239 (Alaska 1983); *Wilson v. Kelley*, 226 So.2d 123, 126 (Fla.App.1969); *Board of Port Commissioners v. Williams*, 9 Cal.2d 381, 391, 70 P.2d 918, 923 (1937); Comment, "Enhancing the Marketability of Land: The Suit to Quiet Title," 68 *Yale L.J.* 1245, 1271–76 (1959). Their history, their reputation, imposed a practical obligation on the defendants to provide assurances that a railroad would have a realistic and not merely a theoretical prospect of obtaining a preliminary determination of its rights within 180 days. Cf. *Logan v. Zimmerman Brush Co., supra,* 455 U.S. at 436–37, 102 S.Ct. at 1158–59.

No such assurances have been forthcoming; nor can we find any empirical basis for them. What we find are six reported Indiana quiet-title actions since 1985 in which the timing of the action is disclosed, and in none did the plaintiff obtain relief, preliminary or otherwise, within 180 days of the occurrence that gave rise to the suit. The plaintiff in *Mickle v. Kirk*, 565 N.E.2d 1161 (Ind.App.1991), came closest: 223 days to an order entitling him to prejudgment possession of the property in question. In *Lake County Trust Co. v. Lane*, 478 N.E.2d 684 (Ind.App.1985)—a suit against Penn Central over a railroad right of way, as it happens—the case took 19 months to resolve *from the date of suit* even though it was decided on motions for summary judgment, without need for a trial. *Carr v. Dorenkamper*, 556 N.E.2d 1333 (Ind.App.1990), took about the same length of time. *Miller Reeder Co. v. Farmers State Bank*, 545 N.E.2d 593 (Ind. App.1989), took more than two years— again just to summary judgment—while *Crager v. Fry*, 479 N.E.2d 613 (Ind.App. 1985), traversed the same ground in 10 months. In *Clark v. Jones*, 519 N.E.2d 158 (Ind.App.1988), it was 11 months to hearing—14 months if one started counting from when the plaintiff had received the deed on which he based his suit. In both *Mickle*—our fastest case—and *Clark*, the plaintiff was the purchaser of a tax deed, and knew before he purchased it that he would be bringing a quiet-title suit against the original owners. Penn Central doesn't have the same early warning: the first time it learns that its title has been challenged is when it receives the statutory notice. Maybe it could study all its deeds in advance, but this would be difficult and costly because they number in the thousands.

But so what if the railroad can't get a hearing and decision within 180 days? Even if five years were required to determine the railroad's title, still it would get the property back then, so the taking effected by the challenged statute would be merely a temporary one. But the requirement of due process, including a predeprivation hearing where feasible, applies to temporary as well as to permanent deprivations. *Connecticut v. Doehr, supra,* 111 S.Ct. at 2113, 2115; *Sutton v. City of Milwaukee*, 672 F.2d 644, 645 (7th Cir.1982). That is not to say that a deprivation's duration is irrelevant to the right to a predeprivation hearing. The shorter the deprivation in relation to the period required to

complete the postdeprivation hearing, the less likely a predeprivation hearing is to be feasible. If quiet-title actions took 181 days, it would be pedantic to insist on a predeprivation hearing. But we are speaking of an interval quite plausibly of years before the railroad could get its property back. And anyway we do not understand the defendants to be arguing that a predeprivation hearing is dispensable here. Their argument is that the quiet-title action enables such a hearing. In light of the history and procedures of quiet-title actions, this argument is sufficiently implausible to demand some evidence or at least particulars, none of which has been forthcoming.

And if we are construing the defendants' submission too narrowly and what they really mean to argue is that under the cost-benefit test of *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), and cases following it such as *Sutton v. City of Milwaukee, supra,* the postdeprivation process provided by Indiana's quite-title procedures is enough, they still must lose. That test is an alternative way of formulating—more accurately perhaps, generating—exceptions to the requirement of predeprivation process. Instead of enumerating discrete exceptions, such as emergency or infeasibility, a court in applying the test asks whether, all things considered, predeprivation process is a reasonable requirement to impose. That depends on the balance between the benefits and the costs of such process. Here the benefits would be substantial, because a hearing in advance would be likely to prevent, in a significant number of cases, a grab of property belonging to another—that is, to the railroad—by a neighbor. The costs, either to the government (which is to say, the taxpayers) of Indiana or to the neighbors of the railroad, would be slight, because it would be simple enough for the State of Indiana to devise a quick and cheap procedure by which the railroad could obtain some sort of hearing before its property right was extinguished, even if temporarily, by the recording of an adverse title. Nothing very elaborate would be required, for, consistent with the *Mathews*

test, in a case where a full postdeprivation hearing is available—as it is here, through the quiet-title procedure—the requirements for a predeprivation hearing are modest. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 545–46, 105 S.Ct. 1487, 1495, 84 L.Ed.2d 494 (1985). A summary proceeding would be enough. *Id.* It would not undermine any legitimate interests of the adjacent landowners. Compare *Del's Big Saver Foods, Inc. v. Carpenter Cook, Inc.*, 795 F.2d 1344, 1348–50 (7th Cir.1986). It might actually help them, by providing a cheap substitute for a quiet-title suit. The failure of the Indiana legislature to provide for a hearing in the right of way statute appears to be a pure oversight—but one with constitutional implications.

We do not disparage the statute's objectives. It is desirable to eliminate clouds on title and divided ownership, and this the statute does. No doubt the majority of Penn Central's real estate interests in Indiana really are just railroad rights of way which ceased to exist when rail service over them was abandoned. But the railroad is entitled to *some* opportunity to show which ones are not before its rights are extinguished by the recording of title to them in another. (And there are other railroads in the state.) The Indiana mineral-rights abandonment statute, upheld in *Texaco, Inc. v. Short*, 454 U.S. 516, 102 S.Ct. 781, 70 L.Ed.2d 738 (1982), which the defendants press on us, allowed the owner of "abandoned" rights to retain his interest by the simple expedient of filing a claim. See also *United States v. Locke*, 471 U.S. 84, 104–10, 105 S.Ct. 1785, 1797–01, 85 L.Ed.2d 64 (1985). No similar privilege is extended to a railroad that believes its cessation of rail service over a particular line did not extinguish its property rights in the underlying land.

We shall say nothing about the merits of Penn Central's property claims beyond observing that they are not frivolous—though neither are they bolstered by an argument that does strike us as frivolous. This is the argument that when the Penn Central reorganization court confirmed that the railroad's nonrail assets would re-

main with Penn Central rather than go with the rail assets to Conrail, and added that Penn Central would own the nonrail assets free and clear of competing claims, *In re Penn Central*, No. 70–347 (E.D. Pa. Dec. 15, 1978), the court elevated Penn Central's rights of way to fee-simple status. The court did nothing of the sort. It meant free and clear of creditors' claims. It was not adjudicating the rights of Penn Central vis-à-vis neighboring landowners.

We cannot offhand see any basis on which the defendants can resist the entry of a permanent injunction against the enforcement of this statute that we have found to be unconstitutional. Although we shall not convert this to a permanent-injunction case ourselves, as in *Dimeo v. Griffin*, 943 F.2d 679, 681 (7th Cir.1991) (en banc); *Chicago Observer, Inc. v. City of Chicago*, 929 F.2d 325, 329 (7th Cir.1991), and *Cronin v. United States Department of Agriculture*, 919 F.2d 439, 445 (7th Cir. 1990), since all that the plaintiff has asked is that the denial of the preliminary injunction be vacated, we hope that in the district court the parties will convert the matter to a permanent injunction case to avoid a needless duplication of proceedings. For if we are right that the Indiana statute is unconstitutional, Penn Central is entitled to the issuance of a permanent injunction forthwith, in which event its claim for a preliminary injunction would be moot.

REVERSED.