The PENN CENTRAL CORPORATION,
Plaintiff,

v.

U.S. RAILROAD VEST, CORP.,
et al., Defendants.

Jean GILBERT, Auditor, Plaintiff,

v.

U.S. RAILROAD VEST, CORP.,
et al., Defendants.

Nos. S91–257M, S91–288M.

United States District Court,
N.D. Indiana,
South Bend Division.

Aug. 19, 1993.

Robert J. Palmer, John H. Peddycord, South Bend, IN, Matthew J. Siembieda, Alexander D. Bono, Randi S. Hoffman, Philadelphia, PA, Robert J. Siverd, George F. Carr, The Penn Central Corp., Cincinnati, OH, for plaintiff in No. S91–257M.

John C. Hamilton, South Bend, IN, for U.S. R.R. Vest, Corp., Russell Barber, Beverly Barber, Benjamin Marcinkowski, Alice Marcinkowski, Potato Creek Industries, Esther G. Ross, William A. Ross, Gayle A. Uldin and E. Faye Uldin in No. S91–257M.

Mitchell R. Heppenheimer, South Bend, for Beverly Crone and St. Joseph County, IN, in No. S91–257M.

Mark C. Guenin, Wabash, IN, for plaintiff in No. S91–288M.

John C. Hamilton, South Bend, IN, for U.S. R.R. Vest, Corp. in No. S91–288M.

Robert J. Palmer, John H. Peddycord, South Bend, IN, Matthew J. Siembieda, Alexander D. Bono, Randi S. Hoffman, Philadelphia, PA, Robert J. Siverd, George F. Carr, The Penn Cent. Corp., Cincinnati, OH, for Penn Cent. Corp. in No. S91–288M.

## MEMORANDUM AND ORDER

MILLER, District Judge.

The Penn Central Corporation ("Penn Central") moves for summary judgment and the entry of a permanent injunction. For the following reasons, the court grants Penn Central's motion and finds that Penn Central is entitled to a permanent injunction.

These consolidated cases concern the constitutionality of Indiana's approach to the problem of abandoned railroad rights-of-way, IND.CODE 8–4–35. The statute provides that the owner of fee simple real property underlying an abandoned right-of-way, or the owner of the land adjacent to the abandoned right-of-way may establish record title in the abandoned rail bed by filing an affidavit with the railroad describing the right-of-way and stating that it has vested in him. IND. CODE 8–4–35–6(a). Within 180 days of receiving the affidavit, the railroad must execute and deliver to the affiant "a quitclaim deed for the portion of the right of way described in the affidavit." IND.CODE 8–4–35–6(b). If the railroad fails to deliver the deed within the specified period, the affiant may establish record title by entering the affidavit for taxation in the county where the right-of-way is located. IND.CODE 8–4–35–7.

Penn Central contends that the defendants in Cause No. S91–257M have used, and absent a permanent injunction will continue to use, those procedures to deprive it of its fee simple interests in certain abandoned rail beds in Indiana without due process of law in violation of the fourteenth amendment to the

United States Constitution. Defendant U.S. Railroad Vest, Corp. ("U.S.R.V.") seeks to invoke the statute's provisions to assist the defendant landowners in obtaining title to property underlying abandoned railroad right of ways. In Cause No. S91–257M, Penn Central seeks a permanent injunction against the statute's operation and compensatory damages. In Cause No. S91–288M, the Auditor of Wabash County, the official charged with carrying out the provisions of IND.CODE 8–4–35 in Wabash County, seeks a declaratory judgment as to the statute's constitutionality. Cause No. S91–288M has been stayed pending final resolution of Cause No. S91–257M.

This court initially denied Penn Central's motion for a preliminary injunction against the operation of IND.CODE 8–4–35. The court found that Indiana law afforded Penn Central adequate process in the form of a quiet title action under IND.CODE 34–1–48–20. The court reasoned that upon receiving an affidavit filed pursuant to IND.CODE 8–4–35–6 asserting a claim to abandoned rail bed, the railroad could obtain an adequate hearing as to its property rights by instituting a quiet title action.

Penn Central appealed, and the Seventh Circuit reversed. The Seventh Circuit found that the history and reputation of quiet title suits "imposed a practical obligation on the defendants to provide assurances that a railroad would have a realistic and not merely a theoretical prospect of obtaining a preliminary determination of its rights within 180 days." *Penn Central Corp. v. U.S.R.V. Corp.*, 955 F.2d 1158, 1162 (7th Cir.1992). The Seventh Circuit found no such assurances in the preliminary injunction record or in its own analysis of reported Indiana quiet title cases. The court noted that in none of the six quiet title actions since 1985 where the timing of the action was disclosed did a plaintiff obtain relief, preliminary or otherwise, within 180 days of the occurrence which gave rise to the suit. *Id.*[1]

The Seventh Circuit remanded the case to this court with "the expectation that the par-

---

1. The court presumes familiarity with its prior order, and the decision of the Seventh Circuit, and accordingly limits its discussion of prior opinions to that which is necessary to the resolution of the issues presently before the court.

ties will convert the matter to a permanent injunction case to avoid a needless duplication of proceedings", noting that "if we are right that the Indiana statute is unconstitutional, Penn Central is entitled to the issuance of a permanent injunction forthwith." *Penn Central Corp. v. U.S.R.V.*, 955 F.2d at 1164.

On remand, consistent with the Seventh Circuit's urging, Penn Central promptly moved for entry of a permanent injunction. The defendants opposed a permanent injunction, contending that unresolved questions of fact precluded the entry of the injunction. Given the defendants' position, the court entered a preliminary injunction in accordance with the Seventh Circuit's opinion, deemed Penn Central's motion for permanent injunction to be one for summary judgment, and afforded the defendants an opportunity to respond to the motion. After a substantial delay in the briefing schedule due to the defendants' mistaken assumption that certain agreements with Penn Central disposed of this case, Penn Central's motion became ripe for ruling on May 17 with the filing of Penn Central's reply brief.

The court has further delayed ruling on Penn Central's motion in the hope that proposed legislation would correct any constitutional infirmity in IND.CODE 8–4–35 and eliminate the need for the court to engage in the unenviable, but constitutionally mandated, task of determining whether to invalidate the product of a state legislative body. *See* House Bill No. 1851, 108th Gen. Assembly, 1st Reg.Sess. (1993). However, given the apparent intention of the General Assembly to give the matter of abandoned railroad rights-of-way further study before acting, *see* Ind.Legis.Serv.P.L. 272–1993 (West) (establishing a committee to investigate the issue of abandoned rights-of-way), the court finds no further reason for delay and proceeds to the merits of Penn Central's motion.

> A party seeking summary judgment must demonstrate that no genuine issue of fact exists for trial and that the movant is entitled to judgment as a matter of law. If that showing is made and the motion's opponent would bear the burden at trial on the matter that forms the basis of the

> motion, the opponent must come forth with evidence to show what facts are in actual dispute. A genuine factual issue exists only when there is sufficient evidence for a jury to return a verdict for the motion's opponent. Summary judgment should be granted if no reasonable jury could return a verdict for the motion's opponent.
>
> The parties cannot rest on mere allegations in the pleadings, or upon conclusory allegations in affidavits. The court must construe the facts as favorably to the non-moving party as the record will permit, and draw any permissible inferences from the materials before it in favor of the non-moving party, as long as the inferences are reasonable. The non-moving party must show that the disputed fact is material, or outcome-determinative, under applicable law.

*Conery v. Bath Associates*, 803 F.Supp. 1388, 1392–1393 (N.D.Ind.1992) (citations omitted).

■ Penn Central argues that the reasoning of the Seventh Circuit's opinion compels the entry of a permanent injunction. The defendants oppose entry of a permanent injunction, contending that unresolved questions of fact exist regarding the constitutionality of IND.CODE 8–4–35, and seek an opportunity at trial to provide the assurances sought by the Seventh Circuit that Penn Central may obtain relief via a quiet title action within 180 days of receiving an affidavit seeking title to a portion of Penn Central's abandoned rail beds.

■ The defendants argue that the assurances required by the Seventh Circuit's opinion are contained in the affidavits of two former Indiana judges who presided at the trial of two of the Indiana quiet title actions noted by the Seventh Circuit which took more than 180 days to resolve. *See Mickle v. Kirk*, 565 N.E.2d 1161 (Ind.Ct.App.1991); *Miller Reeder Co. v. Farmers State Bank*, 545 N.E.2d 593 (Ind.Ct.App.1989). In their affidavits, Judges John W. Montgomery and Edward Madinger state that to the best of their recollection the cases they presided over did not involve an application by either party for either a temporary restraining order or a preliminary injunction, and further opine that based on their experience there is

no reason why a party to a quiet title action could not obtain a preliminary injunction or temporary injunction pursuant to Rule 65 of the Indiana Rules of Trial Procedure within ninety days of filing the complaint, or within the notice period set forth in IND.CODE 8–4–35. These affidavits fail to provide the assurances necessary to make IND.CODE 8–4–35 constitutional or to stave off entry of a permanent injunction under the reasoning of the Supreme Court's due process jurisprudence or the Seventh Circuit's prior opinion in this case.

As is evident in their critique of the Seventh Circuit's opinion, the defendants' opposition to summary judgment presupposes that the adequacy of the hearing afforded to Penn Central by Indiana law is a question of fact, or, at the very least, involves a factual inquiry. An analysis of applicable Supreme Court precedent, however, indicates that the question before the court is purely one of law. The issue is not whether, as a practical matter, the operation of Indiana Rules of Trial Procedure and the quiet title action would afford a property owner in the position of Penn Central a pre-deprivation hearing in most cases, but whether Indiana, as a matter of law, guarantees such a hearing, and if not, whether there is a compelling reason why such a guarantee is unnecessary to provide the process due under the Fourteenth Amendment.

■■■ The root requirement of the Due Process Clause is "that an individual be given an opportunity for a hearing *before* he is deprived any significant property interest." *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 542, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1984) (quoting *Boddie v. Connecticut,* 401 U.S. 371, 379 (1971), 91 S.Ct. 780, 787, 28 L.Ed.2d 113 (emphasis in original)). The requirement of a pre-deprivation hearing applies to temporary as well as permanent deprivations. *Connecticut v. Doehr,* — U.S. —, —, —, 111 S.Ct. 2105, 2113, 2115, 115 L.Ed.2d 1 (1991). Absent an extraordinary situation, the state's power to seize a person's property may not be invoked without prior notice and an opportunity to be heard. *Miller v. City of Chicago,* 774 F.2d 188 (7th Cir.1985); *see Fuentes v. Shevin,* 407 U.S. 67, 90, 92 S.Ct. 1983, 1999, 32 L.Ed.2d 556 (1972). Thus, pre-deprivation notice and hearing represent the norm, and the state must advance important reasons to justify anything else. *Miller v. City of Chicago,* 774 F.2d 188, 191 (7th Cir.1985) (collecting cases).

The affidavits submitted by the defendants at most establish a strong likelihood that Penn Central could obtain a hearing via preliminary injunction proceedings in an independent quiet title action before title would vest to a claimant who filed an affidavit under IND.CODE 8–4–35. This likelihood is insufficient to make the statute constitutional because neither the provisions of Indiana Trial Rule 65(B) nor the quiet title statute provide the procedural guarantee that is the hallmark of due process: that Penn Central will not lose its property until after it has had at least a minimal opportunity to present its side of the story. *See Cleveland Bd. of Education v. Loudermill,* 470 U.S. at 542, 105 S.Ct. at 1493.

IND.CODE 8–4–35–7 provides for the automatic recording of a deed after 180 days upon the filing of an affidavit by a claimant to the abandoned rail bed regardless of the status of a pending quiet title action regarding the subject property. Notwithstanding the studied opinions of Judges Montgomery and Madinger, the possibility exists as a matter of law that an affidavit would be filed and title transferred without Penn Central having obtained a determination of its rights to the subject property, even by way of a summary proceeding.

The defendants point to several Indiana cases in which preliminary injunctions were obtained within ninety days of the motions being filed, *see e.g., Bowen Engineering Corp. v. W.P.M., Inc.,* 557 N.E.2d 1358, 1361–63 (Ind.Ct.App.1990); *Franzen v. Carmichael,* 398 N.E.2d 1379, 1380 (Ind.Ct.App. 1980), but none of these cases guarantee that a hearing would be afforded before title to an abandoned rail bed lapsed via the operation of IND.CODE 8–4–35.

As noted by the Seventh Circuit, there is no Speedy Trial Act for quiet-title suits in Indiana. *Penn Central v. U.S.R.V.,* 955 F.2d at 1162. Trial Rule 65(A)(3) directs that the

judge "shall act and require the parties to act promptly," and provides procedures designed to effectuate that goal, but nothing in Rule 65 guarantees a hearing and determination before expiration of the 180–day period of IND. CODE 8–4–35–7.

The Supreme Court's decision in *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 434, 102 S.Ct. 1148, 1157, 71 L.Ed.2d 265 (1981), indicates that the failure of Indiana law to guarantee a hearing before the expiration of the 180 day period offends due process. In *Logan,* the Court found that provisions of Illinois' Fair Employment Practices Act violated the Due Process Clause. The Act required a complainant alleging a wrongful discharge due to a physical handicap to file a charge with the state Employment Practices Commission before filing a civil action, and further required that the Commission hold a fact-finding conference within 120 days of the filing of the claim. State law further provided that the 120 day requirement was jurisdictional, and that the failure of the Commission to hold a hearing within 120 days precluded the commission from determining the merits of a charge after the expiration of a 120–day period and barred the complainant from filing an independent civil action, even if the failure to hold a timely hearing was due solely to the commission's negligence. 455 U.S. at 425, 102 S.Ct. at 1152.

The Court found that the right to file a fair employment practices cause of action was a property right protected by the Constitution, and that the state system extinguished this right without due process by providing that a complainant's cause of action extinguished upon the lapse of 120 days without action by the commission. 455 U.S. at 430–432, 102 S.Ct. at 1154–1156. The Court held that the availability of a post-deprivation negligence action against the commission in the rare case where commission's inaction barred a hearing did not provide adequate process because it was the established state procedure, not the commission's negligence, that destroyed the claimant's property right. 455 U.S. at 436, 102 S.Ct. at 1158.

Like the statutory scheme at issue in *Logan,* IND.CODE 8–4–35 operates to extinguish a property right upon the mere lapsing of time, regardless of whether the state had been able to afford the aggrieved party a hearing before the extinguishing of the right pursuant to the statutory scheme. *Logan* indicates that the state's ability to provide a timely hearing most of the time does not satisfy due process and does not justify the failure to guarantee a pre-deprivation hearing in all cases.

The *Logan* Court stressed that its opinion did not preclude the state from foreclosing a hearing on the merits when a claimant failed to comply with reasonable requirements for triggering rights to an adjudication, such as statutes of limitations or filing fees. 455 U.S. at 437, 102 S.Ct. at 1158. Similarly, this court intends no implication that the procedural prerequisites to the filing of a quiet title action, standing alone, deprive Penn Central of due process. However, any argument that any taking of Penn Central's property under IND.CODE 8–4–35 is its own fault because it failed to trigger its right to a hearing by filing a quiet title action must fail in this case. Even had Penn Central taken all reasonable steps to obtain a hearing, there is no guarantee that it would receive a hearing before its property entitlement would lapse pursuant to the operation of IND.CODE 8–4–35.

If the defendants could offer a reason why such a guarantee would be unfeasible or impracticable, the Indiana statute might survive constitutional challenge. *Penn Central v. U.S.R.V.,* 955 F.2d at 1161; *see Logan v. Zimmerman Brush Co.,* 455 U.S. at 436, 102 S.Ct. at 1158; *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). As noted by the Seventh Circuit, however, the benefits of a guaranteed predeprivation hearing would be substantial and the costs minimal. *See Penn Central v. U.S.R.V.,* 955 F.2d at 1163. On remand, the defendants have cited no compelling interest of either themselves or the state that suggests that Penn Central should be forced to defend its title to abandoned rail beds by instituting a separate quiet title action and risk the possibility that title would lapse under IND. CODE 8–4–35–7 before a hearing could be held in the quiet title action.

To assume, as to the defendants, that due process only requires a showing that a sepa-

**1080**

rate quiet title action will afford a pre-deprivation hearing in most cases is to assume that a post-deprivation hearing would be constitutionally adequate when an aggrieved party cannot obtain a pre-deprivation hearing. Such an assumption does not comport with the requirements of due process absent a showing of a compelling reason why the state cannot feasibly provide a pre-deprivation hearing in all cases. *Logan v. Zimmerman Brush Co.*, 455 U.S. at 436, 102 S.Ct. at 1158.

In summary, the failure of Indiana law to guarantee a pre-deprivation hearing, coupled with the lack of any compelling interest that would make such a guarantee unpracticable, causes the procedure set forth in IND.CODE 8–4–35 to violate Penn Central's right to due process of law. Accordingly, the court finds that Penn Central is entitled to summary judgment and the entry of a permanent injunction. However, the court will defer entry of a permanent injunction given the uncertainty as to what form the injunction should take. The court notes that agreements between the parties (the agreements which the court was previously misinformed settled the case) may have mooted some of the terms of the preliminary injunction previously entered by the court. Accordingly, the court will afford Penn Central fifteen days in which to submit a form of order directing the entry of a permanent injunction in accordance with this opinion. In addition, because the court's file indicates the possibility that issues related to Penn Central's claims for compensatory relief still may remain to be resolved, the court will further schedule a status conference to discuss scheduling as to the resolution of the remaining issues.

For the foregoing reasons, the court GRANTS the plaintiff's motion for summary judgment/permanent injunction (*See* Memorandum of Status Conference, March 16, 1992), but defers entry of the injunction pending the submission of a proposed order by the plaintiff within fifteen days of the date of this order.

SO ORDERED.