Gary J. **FERNANDEZ**, Plaintiff,

v.

Paula **WOLFF**, Esthel Allen, the Board of Governors of State Colleges and Universities, and Governors State University, Defendants.

No. 95 C 3709.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 22, 1996.

Robert A. Wolf, Robert A. Wolf & Associates, Hinsdale, IL, for plaintiff.

David L. Stanczak, Dunn, Ulbrich, Hundman, Stanczak & Ogar, Bloomington, IL, Dana D. Deane, Christian Mark Poland, Kimberly Grossman Metrick, and Stephen Boyd Mead, Ross & Hardies, Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiff Gary Fernandez brings this four-count complaint against the Board of Governors of State Colleges and Universities ("the Board"), Governor's State University ("GSU"), the President of GSU, Paula Wolff, and the Dean of the College of Business and Public Administration at GSU, Esthel Allen. Fernandez claims that GSU's refusal to renew his tenure track employment for the 1993–94 academic year violated his rights under the Due Process Clause of the Fourteenth Amendment (Counts I and IV), Title VII of the Civil Rights Act of 1964 (Count III), and the state law of tortious interference with a business relationship (Count II). The defendants now move to dismiss the complaint, and for the reasons set forth below the motion is granted in part and denied in part.

### I. Background

The following discussion reflects the well-pleaded allegations in Fernandez's complaint, which we must accept as true at this stage in the litigation, *Murphy v. Walker*, 51 F.3d 714, 717 (7th Cir.1995). In addition, we shall also take as true the additional factual assertions the plaintiff introduces in response to the instant motion to dismiss, *see Hrubec v. National R.R. Passenger Corp.*, 981 F.2d 962, 963–64 (7th Cir.1992), although we direct him to file an amended complaint incorporating these additional allegations within seven days.[1]

At all times relevant GSU was an Illinois public institution governed by the Board.

---

1. We shall refer to paragraphs of the complaint as "Compl. ¶——" and to pages of the plaintiff's response to the motion to dismiss as "Pl.'s Resp. at ——."

Compl. ¶ 3.[2] The plaintiff, a Hispanic male, was first hired as a full-time accounting teacher by GSU for the academic year 1989–90, Compl. ¶ 6, and was retained the following academic year in a tenure track position as a Professor in Accounting, *id.* ¶ 7. Fernandez maintains that professors at GSU must satisfy certain requirements in order to be retained and eventually granted tenure on the faculty, and that these criteria are contained in GSU's "Faculty Agreement," which specifically incorporates the "Statement of Division Application of Criteria in the Division of Accounting/Finance/Economics" ("Statement"). *Id.* ¶¶ 8–9. Neither of these documents is attached to the complaint or the memoranda submitted regarding the instant motion. Although he is not explicit, the plaintiff apparently satisfied these specific criteria for the academic years 1990–91 and 1991–92, since he claims to have been endorsed by all the relevant authorities at GSU and granted one-year tenure track contracts during these two periods. *Id.* ¶¶ 10–11.

Fernandez claims that when the time came to renew his contract for the 1992–93 academic year, Wolff and Allen recommended against his retention, notwithstanding several endorsements by faculty members both inside and outside his department. *Id.* ¶¶ 12–16. Plaintiff claims that he filed a grievance challenging these decisions, based on alleged violations of the Faculty Agreement. *Id.* ¶ 17. It appears that on March 30, 1993, Fernandez learned that he would not be retained on GSU's tenure track, but would only be granted a terminal contract running until August 1994. Pl.'s Resp. at 7. Consequently, he filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on September 17, 1993, claiming that he was being terminated because of his sex and national origin. *Id.*

On February 1, 1994, a settlement of his grievance was reached whereby the plaintiff would receive a positive retention decision for 1992–93, and would submit his portfolio to the Division of Accounting/Finance/Economics ("the Division") on March 25, 1994 for a determination of his status during the 1993–94 academic year. Compl. ¶ 18–19.[3] Notwithstanding this settlement, Fernandez contends that the defendants failed to provide him with any meaningful process. In support of this contention he maintains that during a March 21, 1994 meeting of the Division, to which he was not invited, Dean Allen was asked by a faculty member why Fernandez was not in attendance. Allen allegedly told the professor that the plaintiff was not invited because he was being terminated from GSU. Compl. ¶¶ 21–22. Fernandez eventually received a positive recommendation from the Division and other faculty organizations at GSU, but Allen gave him a negative recommendation and Wolff sent him a termination letter on August 16, 1994. *Id.* ¶¶ 23–28. He contends that the defendants terminated him not because of his qualifications, but because of a policy at GSU of hiring and promoting females and African-Americans to the exclusion of males and non-blacks. *Id.* ¶¶ 32–36, 50–52.

The plaintiff received his right to sue letter from the EEOC on March 29, 1995, *id.*. ¶ 31, and timely filed the instant action. He claims that he was denied his property (Count I) and liberty (Count IV) interests without due process of law, in contravention of the Fourteenth Amendment and 42 U.S.C. § 1983. He also maintains that he was mistreated and eventually terminated because of his sex and national origin, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* (Count III). Finally, Fernandez claims that Wolff and Allen tortiously interfered with his business relationship with GSU and the Board (Count II).

---

**2.** On January 1, 1996, the Board relinquished control over GSU (as well as several other public universities in Illinois) and vested "the operation, management, control and maintenance" of GSU in the Board of Trustees of Governors State University. 110 ILCS 670/15–35. The Board was then abolished on January 31, 1996. 110 ILCS 605/10.

**3.** It is confusing as to how a decision on Fernandez's 1993–94 status could be made as late as March 1994, or how he could have received a "positive retention" for 1992–93 by virtue of the settlement entered into on February 1, 1994. These ambiguities should be addressed by the plaintiff in his amended complaint.

## II. Motion to Dismiss Standard

Dismissal under Federal Rule of Civil Procedure 12(b)(6) should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Chaney v. Suburban Bus Div. of the Regional Transp. Auth.*, 52 F.3d 623, 627 (7th Cir. 1995). In resolving a motion to dismiss under Rule 12(b)(6), "[w]e read a complaint liberally and 'accept as true the well pleaded allegations of the complaint and the inferences that may be reasonably drawn from those allegations.'" *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 791 (7th Cir.1996) (quoting *Palda v. General Dynamics Corp.*, 47 F.3d 872, 874 (7th Cir.1995)).

## III. Discussion

The defendants challenge each of the four counts of the complaint. Although the plaintiff maintains that at least portions of Counts I–III withstand these attacks, he concedes that Count IV must fail. Accordingly, as Fernandez has voluntarily dismissed this count, we decline to address its merits and instead move on to the remaining counts.

### A. Eleventh Amendment

We first discuss the argument raised by the defendants that the Eleventh Amendment [4] bars this suit against them in federal court. It is settled law that, absent consent by the state or abrogation by Congress, the Eleventh Amendment precludes suit in federal court against a state or its departments for violations of state and federal law, regardless of the nature of the relief sought. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100, 106–07, 121, 104 S.Ct. 900, 908, 911–12, 919, 79 L.Ed.2d 67 (1984). Moreover, because an official capacity claim against a state officer is actually a claim against the state itself, *see Brandon v.*

*Holt*, 469 U.S. 464, 471–73, 105 S.Ct. 873, 877–78, 83 L.Ed.2d 878 (1985), Eleventh Amendment immunity applies to official capacity claims as well, *see Kentucky v. Graham*, 473 U.S. 159, 167, 105 S.Ct. 3099, 3106, 87 L.Ed.2d 114 (1985). Only when the plaintiff challenges the constitutionality of a state official's action, and seeks prospective relief in the nature of an injunction or other equitable relief, does the Eleventh Amendment restriction drop out. *Graham*, 473 U.S. at 167 n. 14, 105 S.Ct. at 3106 n. 14; *Ex parte Young*, 209 U.S. 123, 159–60, 28 S.Ct. 441, 453–54, 52 L.Ed. 714 (1908).

At the time of the alleged violations the Board and GSU were agents of the State of Illinois, *Davidson v. Board of Governors of State Colleges and Univs. for Western Illinois Univ.*, 920 F.2d 441, 442 (7th Cir.1990); *Ellis v. Board of Governors of State Colleges and Univs.*, 102 Ill.2d 387, 80 Ill.Dec. 750, 753, 466 N.E.2d 202, 205 (1984), and Fernandez has offered nothing more than speculation to suggest that their status is otherwise under current law. Therefore, these two defendants are entitled to Eleventh Amendment immunity on Counts I and II.[5] In addition, the claims in Counts I and II against Wolff and Allen in their official capacities for compensatory and punitive damages are precluded by the Eleventh Amendment. *See Papasan v. Allain*, 478 U.S. 265, 276–77, 106 S.Ct. 2932, 2939–40, 92 L.Ed.2d 209 (1986). However, to the extent Fernandez seeks injunctive and declaratory relief in Count I, his official capacity claims against Wolff and Allen are not barred by the Eleventh Amendment. *Kashani v. Purdue Univ.*, 813 F.2d 843, 848 (7th Cir.), *cert. denied*, 484 U.S. 846, 108 S.Ct. 141, 98 L.Ed.2d 97 (1987). Accordingly, we dismiss Counts I and II against the Board and GSU, and all claims for damages in Counts I and II against Wolff and Allen in their official capacities.

---

**4.** "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

**5.** Because Congress has explicitly abrogated Illinois' Eleventh Amendment immunity for suits under Title VII, *see Fitzpatrick v. Bitzer*, 427 U.S. 445, 456–57, 96 S.Ct. 2666, 2671, 49 L.Ed.2d 614 (1976), Count III is unaffected by this discussion.

## B. Count I

At the outset, we consider whether any of the remaining defendants in Count I are considered "persons" under 42 U.S.C. § 1983. In addition to the immunity provided by the Eleventh Amendment, the law of § 1983 also precludes official capacity claims for damages against state officials. *Will v. Michigan Dep't of State Police,* 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989). However, to the extent Fernandez seeks injunctive relief from the official acts of the defendants, and damages against them individually, Wolff and Allen are considered "persons" under § 1983. *Id.* at 71 n. 10, 109 S.Ct. at 2312 n. 10 (official capacity claims for injunctive relief); *Hafer v. Melo,* 502 U.S. 21, 22, 112 S.Ct. 358, 360, 116 L.Ed.2d 301 (1991) (individual liability under § 1983).

We next address the defendants' other challenges to Count I: (1) that Fernandez has not demonstrated a legitimate property interest in his continued employment, (2) that his claim is actually brought in contract, and (3) that he received the option of pursuing adequate post-deprivation remedies, and therefore was not denied due process. While we express some doubts as to the plaintiff's ability to eventually prevail on Count I, we reject each of the defendants' arguments.

Although the defendants assert that property interests must arise from federal law in order to be protected by the Due Process Clause, Defs.' Mem. at 4, the law is clearly to the contrary.

> Property interests, of course, are not created by the Constitution. Rather they are created and their dimensions are defined by the existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). Specifically, a person's interest in a benefit is deemed "property" under the Due Process Clause if "there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit." *Perry v. Sindermann,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). We look to state law to ascertain whether a plaintiff has alleged a legally-protected interest in continued employment. *Border v. City of Crystal Lake,* 75 F.3d 270, 273–74 (7th Cir.1996).

Fernandez first argues that the provision of the Board's organic statute that authorizes the removal of professors "for good cause," 110 ILCS 605/8(3), constitutes a sufficient rule to support his property claim. However, this provision has already been interpreted as a grant of power to the Board, not an entitlement to employees of the state universities in Illinois. *Grimes v. Eastern Ill. Univ.,* 710 F.2d 386, 387–88 (7th Cir. 1983). The plaintiff contends that we should not follow *Grimes* because the plaintiff in that case was an administrative employee, whereas he was a professor. This same argument was rejected by another district court judge in *Lowenstein v. Wolff,* No. 93 C 5067, 1994 WL 411389, at *3–4 (N.D.Ill. Aug. 3, 1994), and we concur with that court's conclusion that 605/8(3) does not create a protected property interest in a university professor's employment.[6]

The plaintiff's more substantial argument is that the mandatory requirements for retention and tenure contained in the Faculty Agreement and Statement provided him with a "legitimate claim of entitlement" to continued employment. *See Roth,* 408 U.S. at 577, 92 S.Ct. at 2709.[7] Although it is true that a property interest in employment can be created where "an employer's discretion is clearly limited so that the employee cannot be denied employment unless specific conditions are met," it is also the case that "[a] property interest is not established by general statements in handbooks, appointment documents or elsewhere that an employee will be judged based on some 'crite-

---

6. In addition, we note that this provision of the Illinois Compiled Statutes has been repealed, *see* 110 ILCS 605/10 (codifying P.A. 89–4, Art. 50, § 50–205), rendering any claim of entitlement questionable.

7. We note that Plaintiff does not allege a "common law" right to re-employment at GSU. *See Perry,* 408 U.S. at 602, 92 S.Ct. at 2700.

ria.'" *Colburn v. Trustees of Indiana Univ.*, 973 F.2d 581, 589 (7th Cir.1992). For example, in *Colburn* the employment materials did not contain any limitations on the discretion of decisionmakers to refuse to rehire the plaintiff, and the criteria for tenure were such "inherently subjective" factors as a candidate's "teaching, research, creative work and service." *Id.* at 590. Although there were specific requirements for dismissing a faculty member prior to the end of her contract term, no such conditions were contained in the reappointment "criteria." *Id.* The court concluded that because of the absence of sufficiently limiting language in the handbooks and appointment documents, professors did not have a property interest in continued tenure track employment. *Id.*

■ Although we suspect that *Colburn* will eventually dispose of the plaintiff's claims, we are not in a position at this juncture to dismiss Count I. Neither party has submitted a copy of the Faculty Agreement or the Statement, which Fernandez claims gave him a legitimate expectation of continued employment so long as he satisfied certain criteria. Compl. ¶¶ 8–9, 38–39. Without the language of these documents before us, we cannot ascertain whether they conferred a property interest in continued employment on Fernandez. *Cf. Paige v. Harris*, 584 F.2d 178, 181–83 (7th Cir.1978) (holding that HUD handbook created contractual tenure system for attorneys). Unlike *Colburn*, which was an appeal from a grant of summary judgment, we can dismiss Count I only if there are no facts which could support Fernandez's claim for relief. Because we cannot conclude at this point that the plaintiff will be unable to present facts demonstrating that he possessed a legitimate property interest in tenure track retention, we must reject the defendants' first attack on Count I.

The defendants' next argument is that the plaintiff's claim in Count I, although styled in terms of a due process violation, is actually one for breach of contract. *See Yatvin v. Madison Metropolitan Sch. Dist.*, 840 F.2d 412, 416–17 (7th Cir.1988) (concluding that appointment to at will position did not confer property right, regardless of potential contract claim). For the reasons discussed

above, we disagree. In this case, Fernandez claims that pursuant to the criteria established by the Faculty Agreement and Statement, he had a legitimate expectation of retention. Whether such an expectation was legitimate under *Roth* cannot be resolved without an examination of these documents. Until this language can be analyzed and compared with the documents at issue in *Colburn*, we are unable to conclude that the plaintiff has no property interest for purposes of the Due Process Clause.

■ Finally, the defendants contend that the plaintiff's claim must fail because he has failed to allege the inadequacy of the post-deprivation procedures provided by GSU. However, "[t]he rule is that a state cannot take a person's property without giving him an opportunity for a hearing *in advance of the taking,* unless there is good reason—an emergency, for example, or the sheer infeasibility of a predeprivation hearing, or the demonstrable adequacy of postdeprivation process—for dispensing with the requirement of a predeprivation hearing." *Penn Central Corp. v. U.S.R.R. Vest Corp.*, 955 F.2d 1158, 1161 (7th Cir.1992) (emphasis in original). The defendants make no real attempt to fit within these exceptions, so we simply consider whether Fernandez has alleged inadequate predeprivation procedures. According to his complaint, Fernandez was given the opportunity to present his portfolio to the Division in order to secure rehiring on the tenure track for the 1993–94 academic year. However, he claims that before his portfolio presentation, Defendants Allen and Wolff had already decided to terminate him from GSU. A hearing that has absolutely no chance of influencing the decisionmakers, since they have already made their decision, strikes us as inadequate under the Due Process Clause. *Cf. Ward v. Village of Monroeville, Ohio*, 409 U.S. 57, 59–61, 93 S.Ct. 80, 82–83, 34 L.Ed.2d 267 (1972) (requiring decisionmaker to exhibit some level of impartiality). Accordingly, we deny the defendants' motion to dismiss the remaining claims in Count I.

### C. *Count II*

In their motion, the defendants also seek dismissal of the state law claims in Count II,

arguing that they "substantially predominate" over the federal claims. *See* 28 U.S.C. § 1367(c)(2). However, the defendants do not detail this argument by comparing Count II to the federal claims; in light of our disposition of the motion to dismiss, such a comparison has in any event changed. Accordingly, we refrain from addressing the substantial predominance issue at this time. In this particular case, the more appropriate time to consider the issue will be when the defendants file additional summary judgment motions regarding the remaining federal claims.

### D. Count III

■■■ Finally, the defendants move to dismiss Count III and its allegations of gender and national origin discrimination in violation of Title VII. Their first attack goes to the timing of Fernandez's charge before the EEOC, which they claim was ineffective because it was filed before his termination in August 1994. As discussed in Part I, it appears that Plaintiff was notified in March 1993 that he would not receive a tenure track contract for 1993–94, but instead would be given a terminable one-year contract. He alleges that the adverse employment decision—wrongful non-retention on tenure track—occurred and was communicated to him in March 1993, and therefore his cause of action accrued at this time. *Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980). Thus his EEOC charge was timely filed on September 17, 1993.[8]

Defendants Wolff and Allen next maintain that they cannot be held liable under Title VII because they are individuals who do not otherwise meet the statutory definition of an "employer." *Williams v. Banning*, 72 F.3d 552, 554–55 (7th Cir.1995). Fernandez asserts that after the dissolution of the Board, GSU will "be on its own," and Wolff and Allen will have interests "more than that of a

supervisor." Pl.'s Resp. at 5. We are unpersuaded by this argument because even after the abolition of the Board, GSU will not be "on its own," but will still act as an arm of the State of Illinois. *See* 110 ILCS 670/15–35. More importantly, Fernandez gives us no reason to conclude that the alteration of GSU's status somehow elevates Wolff and Allen to "employers" under Title VII. Accordingly, we grant Wolff and Allen's motion to dismiss Count III against them.[9]

### IV. Conclusion

In sum, we dismiss Count I against the Board and GSU, as well as the damage claims in Count I against Wolff and Allen in their official capacities. In addition, we dismiss Count II against the Board, GSU, and Wolf and Allen in their official capacities. Finally, we dismiss Count III against Wolff and Allen, and Count IV in its entirety. The only remaining claims are (1) Count I against Wolff and Allen in their individual capacities, (2) Count I against Wolff and Allen in their official capacities to the extent Fernandez seeks injunctive and declaratory relief permitted by the Eleventh Amendment, (3) Count II against Wolff and Allen individually, and (4) Count III against GSU and the Board. The plaintiff is directed to file an amended complaint within seven days incorporating these rulings. It is so ordered.

---

8. As discussed above, some of these factual allegations are omitted from the complaint, and we therefore remind the plaintiff to incorporate them in an amended complaint.

9. GSU claims in its motion that it was not named in Fernandez's EEOC charge, but even a cursory

examination of the document demonstrates the inaccuracy of this assertion. In any event, GSU's failure to discuss this argument in its memoranda constitutes waiver. *Colburn*, 973 F.2d at 593.